[No. F008684. Fifth Dist. July 25, 1988.]

MITSUE TAKAHASHI, Plaintiff and Appellant, v.
BOARD OF EDUCATION OF LIVINGSTON UNION SCHOOL
DISTRICT et al., Defendants and Respondents.

MITSUE TAKAHASHI, Plaintiff and Appellant, v.
LIVINGSTON UNION SCHOOL DISTRICT et al., Defendants and
Respondents.

**COUNSEL**

Douglas B. Cone for Plaintiff and Appellant.

Loren E. McMaster, Blumberg, Kerkorian, Andreen, Seng & Ikeda, Dale Ikeda, Lee & Hui, Michael G. W. Lee, Takamine & Huang and Gene L. Takamine as Amici Curiae on behalf of Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Paul M. Loya, Peter J. Lucey and Angela K. Kreta for Defendants and Respondents.

**OPINION**

**HAMLIN, J.**—Plaintiff Mitsue Takahashi appeals from a judgment dismissing her causes of action against defendants Livingston Union School District, Board of Education of Livingston Union School District, Harold Thompson, Dale Eastlee and Hamilton Brannan after the trial court grant-

ed defendants' motions for summary judgment in consolidated proceedings Nos. 70836 and 71869.

The basic issue on appeal is whether or not the judgments in the litigation previously initiated by plaintiff in both California and federal courts against one or more of the defendants in these consolidated actions operate as a bar to the present actions under res judicata principles. Decision on the issue presented requires us to determine the relationship between the procedures under the California Fair Employment Practices Act (Gov. Code, § 12900 et seq.) and the schoolteacher dismissal procedures. We will conclude that the judgments in the previous litigation are res judicata on the issues in the consolidated actions and will affirm the judgment.

PROCEDURAL BACKGROUND

Our statement of the procedural background is based upon the record before this court in case No. F000235 as well as the record in the present action, F008684. The record in case No. F000235 provided the basis for this court's decision in *California Teachers Assn.* v. *Governing Board* (1983) 144 Cal.App.3d 27 [192 Cal.Rptr. 358]. This court takes judicial notice of its own record in that case.

Plaintiff was employed by the Livingston Union School District (district) in 1960 and continued in employment there until the fall of 1980, rendering her at the time of the hearing a permanent or tenured teacher.[1]

On May 8, 1978, plaintiff was given an evaluation of her job performance. That evaluation isolated problems with classroom management as a specific concern. She was notified at that time, during the 1977-1978 school year, that if satisfactory improvement were not shown, formal dismissal proceedings would be initiated during the 1978-1979 school year.

In an April 1979 formal evaluation of plaintiff's performance, lack of student control and classroom management were again isolated as serious problems. That evaluation recommended the giving of a 90-day notice pursuant to Education Code section 44938 and the initiation of dismissal

---

[1] Former Education Code section 44882 (repealed by Stats. 1987, ch. 1452) provided: "Every employee of a school district of any type or class having an average daily attendance of 250 or more who, after having been employed by the district for three complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district."

All future references to the Education Code will be to the text of the Code as it read in 1980.

proceedings if improvement were not shown.[2] Promptly after that evaluation was submitted, plaintiff was given a section 44938 90-day notice of specific areas of deficiency in her teaching, setting forth specific instances on which the notice was based. At that time, plaintiff was notified that the specific instances were considered of such significance that her failure to correct the faults might result in the district filing charges of dismissal against her. Attached to the 90-day notice was a copy of the formal evaluation.

On November 15, 1979, a further evaluation of plaintiff's job performance was made.[3] That evaluation noted several deficiencies and further noted that a variety of suggestions had been made to improve instruction and classroom management that had not been implemented. It included the statement: "if the deviciencies [*sic*] so noted are not significantly corrected, dismissal is recommended."

On May 12, 1980, plaintiff was issued a document entitled "notice of intent to dismiss," along with a statement of charges indicating that cause existed to dismiss her on the basis of incompetency (Ed. Code, § 44932, subd. (d))[4] and that the district intended to do so. Attached to the notice of charges was a copy of the November 15, 1979, evaluation.

---

[2] Education Code section 44938 provided: "The governing board of any school district shall not act upon any charges of unprofessional conduct or incompetency unless during the preceding term or half school year prior to the date of the filing of the charge, and at least 90 days prior to the date of the filing, the board or its authorized representative has given the employee against whom the charge is filed, written notice of the unprofessional conduct or incompetency, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his faults and overcome the grounds for such charge. The written notice shall include the evaluation made pursuant to Article 11 (commencing with Section 44660) of Chapter 3 of this part, if applicable to the employee. 'Unprofessional conduct' and 'incompetency' as used in this section means, and refers only to, the unprofessional conduct and incompetency particularly specified as a cause for dismissal in Sections 44932 and 44933 and does not include any other cause for dismissal specified in Section 44932."

[3] Education Code section 44664 provided in pertinent part: "Evaluation and assessment of the performance of each certificated employee shall be made on a continuing basis, at least once each year for probationary personnel, and at least every other year for personnel with permanent status. The evaluation shall include recommendations, if necessary, as to areas of improvement in the performance of the employee. In the event an employee is not performing his duties in a satisfactory manner according to the standards prescribed by the governing board, the employing authority shall notify the employee in writing of such fact and describe such unsatisfactory performance. The employing authority shall thereafter confer with the employee making specific recommendations as to areas of improvement in the employee's performance and endeavor to assist him in such performance. [¶] . . ."

[4] Education Code section 44932 provided in pertinent part: "No permanent employee shall be dismissed except for one or more of the following causes: [¶] . . . [¶] (d) Incompetency. [¶] . . ."

On June 26, 1980, a notice of accusation was served on plaintiff, informing her that unless she requested a hearing within 15 days the board of trustees of the district would proceed upon the accusation without a hearing. The hearing referred to is one to be held as provided in Education Code section 44944.[5] The hearing was held on October 21, 1980, before the Commission on Professional Competence (Commission) pursuant to Education Code section 44944.

At the termination hearing plaintiff challenged the Commission's jurisdiction based on the district's failure to comply with the Stull Act (Ed. Code, § 44660 et seq.). That challenge was denied. In addition to the jurisdictional challenge, plaintiff raised at the administrative hearing the following issues in her defense: (1) that her students had good test scores; (2) that certain disruptive students who should not have been in the same room had been put in her classroom; (3) that other classes were also noisy; (4) that the criteria for judging incompetency were inadequate and not uniform so that no objective, verifiable determination of plaintiff's competency or incompetency could be established; and (5) that she believed she was doing as good a job as the other teachers.

There was no mention nor suggestion in the transcript of the administrative hearing of any defense based on violation of plaintiff's civil or constitutional rights.

After the administrative hearing was completed, the Commission rendered its decision on November 6, 1980, determining that certain of its findings constituted cause for the dismissal of plaintiff from her position as a permanent certificated employee of the district based upon incompetency (Ed. Code, § 44932, subd. (d)), and ordered that plaintiff be dismissed from her position effective forthwith.

On December 4, 1980, plaintiff filed in the Superior Court of Merced County a petition for writ of mandate (first action) alleging that (1) the Commission committed a prejudicial abuse of discretion in that the findings

---

[5] Education Code section 44944 provided a comprehensive scheme for the conduct of hearings to determine if cause existed to terminate permanent certificated employees of a school district. Among other things that section provided that the hearing will be initiated, conducted and a decision made in accordance with chapter 5 (commencing with § 11500) of part 1 of division 3 of title 2 of the Government Code; that the right to discovery shall include the rights and duties of any party in a civil action brought in a superior court; that continuances may be granted pursuant to Government Code section 11524 and any time lines set forth in Education Code section 44944 would be extended for a period of time equal to any such continuance; and that the time periods set forth in the applicable sections of the Government Code shall not be applied so as to deny discovery in a hearing conducted pursuant to Education Code section 44944.

of the Commission were not supported by the evidence and the findings did not support the decision of incompetency; (2) the Commission proceeded without or in excess of its jurisdiction because incompetency may only be proved by reference to uniform, objective standards, which the district did not have; and (3) the district lacked jurisdiction to proceed because it failed to include with the 90-day notice an Education Code section 44660 evaluation (Ed. Code, § 44938), and since the focus of a charge of teacher incompetence is whether or not the students learned the required material, the charge was rebutted by evidence that plaintiff's students accomplished their academic goals. (Code Civ. Proc., § 1094.5, subd. (b).) That petition named both the California Teachers' Association (CTA) and Mitsue Takahashi as plaintiffs.

On May 1, 1981, the petition in the first action was argued and denied. The reporter's transcript of that hearing shows that plaintiff elected to argue only the lack of jurisdiction of the Commission to dismiss plaintiff because of the failure of the district to comply with the provisions of the Stull Act. The action was dismissed and judgment entered on June 9, 1981.

A notice of appeal was filed on August 5, 1981. This court affirmed the trial court's denial of the petition in the first action. That opinion was certified for publication and appears as *California Teachers Assn.* v. *Governing Board, supra,* 144 Cal.App.3d 27. A petition for rehearing in this court and a petition for hearing in the California Supreme Court were denied. Plaintiff also petitioned the United States Supreme Court; certiorari was denied by the United States Supreme Court (1984) 465 U.S. 1008 [79 L.Ed.2d 235, 104 S.Ct. 1003].

On November 10, 1983, plaintiff filed an action in the United States District Court for the Eastern District of California for damages and injunctive relief based on 42 United States Code sections 1981 and 1983 (hereafter federal court case). The district court held that the decision in the first action precluded plaintiff's federal court case. The United States Court of Appeals for the Ninth Circuit affirmed that holding in *Takahashi* v. *Bd. of Trustees of Livingston* (9th Cir. 1986) 783 F.2d 848, and certiorari was denied by the United States Supreme Court (1986) 476 U.S. 1182 [91 L.Ed.2d 545, 106 S.Ct. 2916].

On November 15, 1982, plaintiff filed a complaint in the Superior Court of Merced County for damages, case No. 70836. That complaint (hereafter the common law case) alleged causes of action for breach of employment contract and conspiracy to defraud. It specifically alleged that plaintiff's employment contract was breached by the district's "terminating the plaintiff without just cause" and cited seven specific instances of such breach.

The second cause of action alleged that various district employees conspired to "set the plaintiff up" to "attempt to show justification in terminating the plaintiff." The complaint in the common law case was amended on September 22, 1983, to add causes of action for intentional and negligent infliction of emotional distress.

On March 31, 1983, a separate complaint, case No. 71869, was filed seeking "monetary, injunctive and declaratory relief." That complaint (hereafter the civil rights case) alleged causes of action for (1) wrongful discharge from employment for exercise of plaintiff's First Amendment rights of freedom of speech and association; (2) unconstitutional discharge from employment for exercise of right of liberty and property in employment in violation of the right to due process (the complaint specifically alleged that: (a) plaintiff was terminated from her employment because she held a job outside of her teaching job, and (b) her right to due process was violated since no allegations or charges relating to her outside employment were made); (3) termination of employment in violation of equal protection of the laws, specifically that she was terminated for holding outside employment and that other people holding outside employment were not similarly terminated; (4) discrimination in employment on account of race and ancestry, alleging that plaintiff was terminated from her employment because defendants were "motivated by pejorative stereotypes and biases as to Japanese persons"; (5) discrimination in employment on account of sex, alleging that defendants terminated plaintiff because they used "sex differential criteria in evaluation and criticism of Takahashi"; (6) discrimination in employment on account of age, alleging "in terminating Takahashi's employment based upon alleged 'incompetence' purportedly consisting of an inability to control student behavior, defendants employed age-differential criteria."

After demurrers to the complaints in both the common law and civil rights cases were overruled, answers were filed in both actions. Each answer denied the allegations of the complaint and raised certain affirmative defenses, including failure to exhaust administrative remedies, res judicata and unclean hands.

After the common law and civil rights cases were consolidated pursuant to stipulation, defendants moved for summary judgment. The motion was heard, and about three weeks later an untitled document was filed in the consolidated action reading in its entirety as follows: "Defendants have moved for summary judgment in these consolidated actions. [¶] This court concludes that previous State and Federal court litigation bars these actions on the basis of res judicata. [¶] There are no material facts in dispute and defendants are entitled to a judgment as a matter of law. [¶] The issues here

present were litigated or could have been litigated in prior administrative and mandamus proceeding. [¶] The motion is granted in both these actions." Based on this grant of the motion for summary judgment, the trial court entered a judgment dismissing the consolidated actions.

## DISCUSSION

*Did the trial court err in concluding that the judgment in the first action and/or the federal court case operates as a bar to these consolidated actions?*

To determine if either judgment operates as a bar, we will examine the doctrines of res judicata and collateral estoppel and the relationship of those principles to the administrative hearing and the petition in the first action. We then apply the elements of res judicata to these consolidated actions to determine whether the same primary right is being asserted here as in the former cases and if it is being asserted against the same parties or those in privity with such parties. Finally, we will consider the effect of issues that were not litigated and the impact of claims that plaintiff asserts could not have been raised at the time of the administrative hearing or the first action.

### *Standard of Review*

On appeal from the granting of a motion for summary judgment, our review is limited to the facts shown in the documents presented to the trial court in independently determining their construction and effect as a matter of law. (*Bonus-Bilt, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429 [186 Cal.Rptr. 357].) Thus this court reviews the actions of the trial court for abuse of discretion as to the factual allegations and looks independently at the legal effects of those facts.

The only material facts brought to the trial court's attention in the consolidated action to bar plaintiff's common law and civil rights causes of action related to the first action and the federal court case. Thus we are required independently to determine the legal effect of those facts.

The California Supreme Court has recognized that "A valid final judgment on the merits in favor of a defendant serves as a complete bar to further litigation on the same cause of action." (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593].) This doctrine is commonly referred to as res judicata. A secondary aspect of res judicata is collateral estoppel. (*Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865].) Collateral estoppel precludes a party to an action from relitigating in a second proceeding matters litigated and determined in a prior

proceeding. (*Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [25 Cal.Rptr. 559, 375 P.2d 439].) Traditionally the doctrine has been applied to give conclusive effect in a collateral court action to a final adjudication made by a court in a prior proceeding. (*People* v. *Sims* (1982) 32 Cal.3d 468, 477 [186 Cal.Rptr. 77, 651 P.2d 321].)

■ Plaintiff seems to be saying in part that the underlying action cannot be res judicata since the original action was an administrative rather than a judicial proceeding. *People* v. *Sims, supra,* stands for the proposition that the final judgment of an administrative hearing may have collateral estoppel effect in a subsequent court proceeding (in that case a criminal proceeding). ■ However, plaintiff is mistaken in believing that it is the administrative proceeding that serves as the bar in this case. The first action (in the superior court) is the state court proceeding upon which the trial court based its finding of res judicata as to the consolidated actions. As discussed, that first action was brought by plaintiff in December 1980. The trial court independently reviewed the record of the administrative hearing, held a hearing at which plaintiff had the opportunity to present any argument to the court, and determined independently that cause existed to dismiss plaintiff on the basis of incompetency. That judgment has long since become final.

A. *The primary right involved here is the same as in the first action.*

Plaintiff has argued that she is not precluded from bringing the present actions since she did not assert the violation of the same rights as defenses to termination for cause in the first action. She points out that her actions involve a different primary right and the Commission did not have the authority to award her punitive damages, thus precluding an appropriate remedy in that forum.

■ To determine the scope of causes of action, California courts employ the "primary rights" theory. Under this theory, the underlying right sought to be enforced determines the cause of action. In determining the primary right, "the significant factor is the harm suffered." (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 954 [160 Cal.Rptr. 141, 603 P.2d 58].)

The United States Court of Appeals for the Ninth Circuit in *Takahashi* v. *Bd. of Trustees of Livingston, supra,* 783 F.2d 848, concluded that plaintiff's federal court case was barred by the res judicata effect of the prior state court judgment denying plaintiff's petition in the first action. Plaintiff's complaint in the federal court case alleged that the district violated her rights under the Fourteenth Amendment to the United States Constitution

and 42 United States Code sections 1981 and 1983 by (1) terminating her employment on account of her sex and ethnic origin, (2) terminating her employment on the basis of the impermissibly vague requirement that she maintain a suitable learning environment in her classroom, and (3) employing methods of evaluating her job performance that were different from those employed to evaluate the performance of others similarly situated.

That court characterized plaintiff's first action as an action based on the invasion of her contractual right to employment by the district. It then determined that the identical primary right, the contractual right to employment, was at stake both in the first action and in the federal court case. Quoting from *Agarwal* v. *Johnson, supra,* 25 Cal.3d 932, 955, the court noted that in determining the primary right at stake, " 'the significant factor is the harm suffered.' " (*Takahashi* v. *Bd. of Trustees of Livingston, supra,* 783 F.2d at p. 851.) The court went on to say, "Absent termination of her employment contract, Takahashi suffered no harm. Takahashi's allegations of mental distress caused as a result of her dismissal do not present a separate injury. Rather, any such distress would be a consequence of the District's violation a [*sic*] Takahashi's primary contractual right. Consequential damages cannot support a separate cause of action." *(Ibid.,* fn. omitted.)

Plaintiff has again cited *Agarwal* as support for her position that separate primary rights are involved. *Agarwal* does appear to support plaintiff's position, but it is distinguishable. In that case, the plaintiff was terminated from private employment without notice. He was notified on September 25 that he had been terminated on September 17, 1970, for insubordination. He was not able to find work for 13 months. The plaintiff's former employer made unfavorable statements about him to prospective employers. Agarwal then sued his employer for defamation and emotional distress. Before the state court case came to trial, a federal court action on the individual and class claims of discrimination under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000(e) et seq.) was concluded.

The California Supreme Court concluded in *Agarwal* that the federal court's determination of the claims under title VII of the Civil Rights Act of 1964 was not res judicata as to the issues raised in the state court proceeding because the harm for which Agarwal recovered damages in the state court action was different. It pointed out: "Our review of the district court's findings of fact discloses that its attention was primarily directed to McKee's [the defendant's] employment practices and the corresponding impact on racial minorities, and to statistical analyses of the McKee employee population. Although Agarwal's state court claims for defamation and intentional infliction of emotional distress arose in conjunction with the

alleged violation of title VII, the fact remains that in the present action he was awarded damages for harm distinct from employment discrimination. (Cf. *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36, 49-50, & fn. 10 [39 L.Ed.2d 147, 94 S.Ct. 1011] . . . .)" (*Agarwal* v. *Johnson, supra,* 25 Cal.3d at p. 955.)

All of plaintiff's alleged causes of action in this consolidated action arise in conjunction with or as a result of the alleged wrongful termination of her employment. Indeed, plaintiff specifically alleges that each act complained of caused the dismissal (wrongful discharge, conspiracy, unconstitutional discharge, discharge in violation of state civil rights) or was a consequence of the termination (emotional distress, damages), part and parcel of the violation of the single primary right, the single harm suffered. (See also *Mattson* v. *City of Costa Mesa* (1980) 106 Cal.App.3d 441, 446-448 [164 Cal.Rptr. 913].) Plaintiff's allegations of consequential injuries are not based upon infringement of a separate primary right.

Plaintiff has further argued that even if the same primary right is involved, the Commission could not have awarded punitive damages and she should therefore be able to bring a separate suit for punitive damages.

We agree that the Commission did not have jurisdiction to award damages, either consequential or punitive. The power of the Commission is restricted by the terms of Education Code section 44944, subdivision (c), providing that the Commission shall prepare a decision containing findings of fact, determinations of issues and a disposition that the employee should or should not be dismissed.

However, we disagree that the Commission's lack of authority to award damages somehow excuses plaintiff's failure to present her defenses to the district's charges of incompetency at the termination hearing. There can hardly be justification for such a position. Government Code sections 11505 and 11506 give the plaintiff the right to interpose any defense, and the Commission is required to make findings of fact and determination of issues. Right of discovery is the same in proceedings before the Commission as in civil lawsuits and continuances may be had.[6] (*Powers* v. *Commission on*

---

[6] Sections 11500 through 11528 of the Government Code set forth the procedures for "Administrative Adjudication." Those procedures were used in 1980 and today for the conduct of termination hearings for permanent certificated employees of school districts. They provide for, among other things, the appointment of hearing officers (Gov. Code, § 11502), the service of the accusation (complaint) against the employee (Gov. Code, § 11505), the right of the employee to interpose a defense (Gov. Code, §§ 11505, 11506), provisions for discovery (Gov. Code, §§ 11507.5-11507.7), time and place of hearing (Gov. Code, § 11508), notice of hearing (Gov. Code, § 11509), service of subpoenas (Gov. Code, § 11510), rules of evidence

*Professional Competence* (1984) 157 Cal.App.3d 560 [204 Cal.Rptr. 185]; Gov. Code, § 11524.)

If violation of constitutional and civil rights had been alleged and proved in proceedings before the Commission to determine whether the district had cause to terminate plaintiff for incompetency, such violation would have made the termination wrongful. Plaintiff would then have been in a position to bring a lawsuit against defendants based on violation of her constitutional rights alleging the damages she suffered thereby, supported by the findings of the Commission. She would also have retained her position and mitigated any possible damages.

B. *The district's employees may assert the first action as a bar to plaintiff's causes of action in this consolidated action even though they were not parties to the first action.*

█ Plaintiff has additionally contended that even if the doctrine of res judicata or collateral estoppel bars her causes of action against the district in these proceedings, her causes of action against the individually named defendants who were not defendants in the first action are not similarly barred. However, since *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807 [122 P.2d 892], mutuality has not been a prerequisite to asserting the defense of res judicata in California. One not a party to a prior suit may successfully assert collateral estoppel as a defense if: (1) the issue decided in the prior action is identical to the one presented in the action in which the defense is asserted; (2) a final judgment has been entered in the prior action on the merits; and (3) the party against whom the defense is asserted was a party to the prior adjudication. (*Id.* at p. 812; see also *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158, 170 [122 P.2d 892].) Here, all three of the individually named defendants were employees of the district and were acting within the course and scope of their employment in terminating plaintiff from her teaching position. They are sued solely because of their involvement in the termination process. The party against whom the bar is being asserted is identical to the one in the prior lawsuit. Since all of the prerequisites to asserting the defense of res judicata or collateral estoppel as stated in *Bernhard* v. *Bank of America, supra,* are satisfied, the district's employees are entitled to assert the decision in the first action as a bar to these consolidated actions.

---

(Gov. Code, § 11513), form of decision (Gov. Code, § 11518), and judicial review (Gov. Code, § 11523).

### C. *The Fair Employment Practices Act remedy does not prevent the judgment in the first action from being res judicata.*

Plaintiff has noted that she has an "absolute right" to bring a private civil lawsuit under the California Fair Employment Practices Act (the Act). She contends she could not have brought such a suit until after the hearing was held on her petition in the first action. She argues on that basis the decision on the petition in the first action cannot preclude her assertion of her claim of job discrimination under the Act. Her reasoning is flawed; while of course she does have a right to bring a lawsuit, that lawsuit may be barred by the decision in a prior lawsuit.

The Act, enacted in 1959 and recodified in 1980, is administered by the Fair Employment and Housing Commission (Housing Commission). The Housing Commission performs adjudicatory and rulemaking functions (Gov. Code, § 12935). The second of the two administrative bodies created by the statute is the Department of Fair Employment and Housing (Department), whose function is to investigate, conciliate, and seek redress of claimed discrimination (Gov. Code, § 12930). The law establishes that freedom from job discrimination as specified is a civil right (Gov. Code, § 12921). The Act is an attempt by the Legislature to "occupy the field" of regulation of discrimination in employment and housing (Gov. Code, § 12993, subd. (c)).

Any person aggrieved may file a verified complaint with the Department. (Gov. Code, § 12960.) The Department is obligated to investigate each claim filed. (Gov. Code, § 12963.) If resolution of the matter by conference or conciliation fails or seems inappropriate, the Department may issue an accusation to be heard by the Housing Commission. The Department acts as prosecutor on the accusation and argues complainant's case before the Housing Commission. If an accusation is not issued within 150 days after the filing of the complaint, the Department must give the complainant a right-to-sue letter. The Department may give such letter earlier if it decides not to prosecute the case and the matter is not otherwise resolved. Upon receipt of the right-to-sue letter, the complainant may then bring a civil action in superior court. (Gov. Code, § 12965, subd. (b).)

The underpinning of plaintiff's argument regarding her causes of action under the Act is that she could not have filed a civil suit thereon until she exhausted the administrative remedies set out in the Act, and that the time needed to exhaust those remedies ran beyond the time of the dismissal hearing and the hearing on her petition in the first action.

The applicable time lines under the Act are that the complaint must be filed with the Department within one year of the alleged discrimination

(which may be extended for no more than 90 days if the aggrieved person first learned of the unlawful practice after the expiration of the one-year period) (Gov. Code, § 12960); the Department must decide to issue an accusation or a right-to-sue letter within 150 days after the complaint is filed; and the complainant must bring civil suit, if at all, within one year of the date of the right-to-sue letter (Gov. Code, § 12965). Plaintiff's argument is that she has an absolute right to bring suit under the Act any time within approximately two and one-half years after the alleged act of discrimination, which plaintiff defines as her termination.

Plaintiff was first informed on May 8, 1978, that she would be dismissed if certain improvements were not made in her job performance. Not until three and one-half years later did plaintiff file a charge of discrimination with the Department. This filing was also fully a year after the actual termination of her employment. In that charge, she alleged only that she was being discriminated against because of her Japanese ancestry. A right-to-sue letter was sent to plaintiff on April 1, 1982, notifying her that if she intended to file a private lawsuit she should file the case within one year from the date of the letter. Almost 18 months after plaintiff filed the charge and almost a year after the right-to-sue letter was issued, counsel for plaintiff requested that plaintiff's charge of discrimination be amended to include additional grounds of race, age, and sex. By letter dated March 7, 1983, plaintiff was informed that the time within which an amendment could be made had "elapsed"; that letter further stated: "In review and discussion between Ms. Takahashi and the assigned consultant, it was determined that the complaint would not be amended to include an additional basis." Although this court might view plaintiff's claim as to age, race, and sex discrimination to be barred, such a result has not been urged by defendants.

The Department has construed the Act to permit it to issue right-to-sue letters at a claimant's request prior to the expiration of the 150-day period. (*Carter* v. *Smith Food King* (9th Cir. 1985) 765 F.2d 916, 923.)

Quite recently in *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1401 [241 Cal.Rptr. 67, 743 P.2d 1323], the court pointed out that it is a mistaken assumption that "a civil action is open only to those whose complaints the commission has refused to prosecute and overlooks the department's evident policy to permit any complainant to sue who wishes to, . . . [¶] . . . [¶] Thus, while the department no doubt pursues only cases it deems meritorious [citations], because its case load precludes the pursuit of all such claims, any complainant who so wishes may bring a private court action."

In *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211 [185 Cal.Rptr. 270, 649 P.2d 912] an employee was fired for reasons he

described as "falsely and fraudulently contrived." There had been no administrative or judicial determination to the contrary. The court held that the plaintiff had the right to seek punitive damages in his action. At page 218, footnote 8, the court noted, ". . . a right-to-sue letter is issued, even in advance of the 150 days, to any person who states in writing that he wants to withdraw his complaint and file a civil action."

 The claimant does not have to wait the entire 150-day period to receive the right-to-sue letter from the Department and certainly does not have to wait the entire one year after receiving the right-to-sue letter to commence the action. It is clear that if at any point plaintiff believed she was the victim of age, sex or race discrimination, as she now attempts to allege in her complaints in this consolidated action, she could have filed a complaint with the Department, asked that the complaint be withdrawn, and that she receive a right-to-sue letter. This would have permitted her to have sued the district and the named individuals even before the termination hearing since she alleged in her complaint that she was evaluated differently, assigned students differently, and assigned work differently while on the job than were younger and/or white and/or male teachers. Alternatively she could have obtained the right-to-sue letter and brought an action at the same time she filed her petition in the first action. The first action was filed in December 1980 but was not determined until June 1981. Complaints may be amended and continuances obtained to ensure that all applicable facts are brought before the court.

Thus while plaintiff may have an absolute right to bring suit under the Act, she does not have an absolute right to prevail. It is clear that rights under the Act may be waived in favor of pursuing another remedy. (See *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493 [86 Cal.Rptr. 88, 468 P.2d 216].) By a parity of reasoning, one may be barred by laches from pursuing the remedy. Plaintiff cannot ignore the fact that she was given an opportunity to present her charge that she was the victim of discrimination as a defense in the dismissal hearing and that her failure to do so may operate as a bar to her claims under the Act. We cannot say in every case that a plaintiff may wait the entire two-and-one-half-year period before asserting the charge of discriminatory treatment and still have the right to prevail. Such a result would undermine the necessary finality in teacher termination proceedings.

Similarly, plaintiff could have filed the notice required by the Tort Claims Act (Gov. Code, § 900 et seq.) when she first became aware that the district intended to dismiss her on what she now claims were discriminatory and illegal grounds. She received the accusation in May 1980; the dismissal hearing was not held until October of that year. If the public entity does not

respond to the claim served pursuant to Government Code section 911.2 within 45 days, it is deemed denied (Gov. Code, § 911.6). There was time for plaintiff to have filed the notices and to have exhausted the administrative procedure she now claims she was precluded from doing.

Clearly what plaintiff was doing in the termination hearing and the first action was defending her dismissal only on the ground that the Commission lacked jurisdiction to proceed against her since the district had not adopted uniform standards pursuant to the Stull Act. Having chosen to "put all her eggs in one basket," she cannot come back years later and add others.

D. *The final judgment in the first action is res judicata as to all issues that were or could have been litigated in that action.*

It is axiomatic that a final judgment serves as a bar not only to the issues litigated but to those that could have been litigated at the same time. In *Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 202 [99 P.2d 652], the California Supreme Court stated the California rule regarding the scope of res judicata as follows: "If the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. [Italics in original.] The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigatable. [Citations.] . . . 'This principle also operates to demand of a defendant that all of its defenses to the cause of action urged by the plaintiff be asserted under the penalty of forever losing the right to thereafter so urge them.' "

It has long been the law in California that any available defense should be asserted at the earliest opportunity and certainly at an administrative hearing. In *Bohn* v. *Watson* (1954) 130 Cal.App.2d 24, 37 [278 P.2d 454], the court stated: "It was never contemplated that a party to an administrative hearing should withhold any defense then available to him or make only a perfunctory or 'skeleton' showing in the hearing and thereafter obtain an unlimited trial de novo, on expanded issues, in the reviewing court."

*Scoggin* v. *Schrunk* (9th Cir. 1975) 522 F.2d 436 is a federal case to the same effect. There, Scoggin's property was acquired by the City of Portland when it was sold for failure of the owner to pay an installment due under a bonded improvement assessment levied by the city. Scoggin sued in state court to get her property back, contending the city was unjustly enriched and that she did not have notice of the sale. She prevailed in the trial court

and lost on appeal. The Supreme Court of Oregon declined to take the case. She brought a 42 United States Code section 1983 action in federal court, contending for the first time that her civil rights were violated in the taking. At page 437 the court had this to say, "the state judgment on the merits serves not only to bar every claim that was raised in state court but also to preclude the assertion of every legal theory or ground for recovery that might have been raised in support of the granting of the desired relief."

Plaintiff's common law case is based on breach of the employment contract, conspiracy, and negligent and intentional infliction of emotional distress based on the alleged breach of contract; the civil rights case is based on plaintiff's wrongful treatment in the terms and conditions of employment because of her age, sex or race. This is all superimposed on a final state court determination that she was terminated from her employment for incompetency. Simply put, plaintiff cannot prevail against defendants on the basis that their conduct toward her that caused her termination was wrongful in the face of a final state court determination in the first action that the district had the right to terminate her for incompetency. That plaintiff elected not to litigate at the hearing before the Commission her claims that she was discriminated against in violation of her constitutional and civil rights does not detract from the finding by the Commission, and independently by the superior court, that the district had cause to dismiss her.

In *City of Fresno* v. *Superior Court* (1987) 188 Cal.App.3d 1484 [234 Cal.Rptr. 136] this court held that each of the causes of action of the real party in interest were necessarily premised, either expressly or impliedly, on the assertion that the civil service board's decision to uphold the removal of an employee was erroneous or unjustified. The court held that under the circumstances the employee was required to exhaust his administrative remedies by petitioning the court for a writ of mandate to set aside the board's decision as a prerequisite to filing his tort action.

Here, the first action was filed. The superior court denied the writ, upholding the action of the Commission. Since it has been finally determined through the writ procedure and through the appellate procedure that the district was entitled to dismiss plaintiff on the basis of incompetence, that judgment is binding as to all issues regarding that termination that were raised or could have been raised.

This court in *City of Fresno* v. *Superior Court, supra,* 188 Cal.App.3d 1484 relied on *Westlake Community Hosp.* v. *Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410]. In *Westlake,* the court concluded that a doctor must exhaust her administrative remedies to have her

dismissal set aside before suing in tort and explained reasons for reaching that conclusion that this court approved.

Plaintiff has cited the case of *Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626 [86 Cal.Rptr. 198] for the specific proposition that the decision in an administrative hearing and writ of mandate proceeding that follows is not res judicata as to the issue of wrongful discharge, since she did not allege in those proceedings that her civil rights and constitutional rights had been violated. Plaintiff argues earnestly, but we are not persuaded.

In *Myers,* a widow filed an action to establish that her husband had been wrongfully discharged, alleging she lost death benefits as a result of such wrongful discharge. Her husband had been terminated from his employment with Orange County by a mailed "notice of discharge." When a form was presented to him to withdraw his retirement contributions from county employment, he signed the form. He died two months after he received the notice of discharge.

After the husband's death, the wife requested the county retirement board to hear her request to rescind the dismissal and reinstate her husband in employment up until the date of his death, so that she would be eligible for death benefits. Her letter requesting the hearing went to the county counsel's office. County counsel opined that the retirement board could not hold such a hearing, reasoning that it had no jurisdiction since the separation from county service occurred from "resignation" not termination. The wife then petitioned for writ of mandamus to require the retirement board to set aside its decision not to hold a hearing and to compel it to hold a hearing. The county, through the retirement board, demurred to the petition. The demurrer was overruled and a trial was held on the petition, resulting in an order denying the writ of mandate. No appeal was taken.

Thereafter, plaintiff wife filed in superior court a complaint for damages for the allegedly wrongful discharge of her husband. The court held that the judgment in the mandate proceeding did not bar the tort causes of action before the court because the issues adjudicated in the mandate proceeding did not include any determination of whether or not plaintiff's husband was wrongfully discharged. (*Myers* v. *County of Orange, supra,* 6 Cal.App.3d at pp. 632-633.)

This case is obviously very different in that the hearing on the petition in the first action necessarily required a decision as to whether or not the district had cause to terminate plaintiff. The Commission determined through specific findings that there was cause to terminate plaintiff from her employment because of incompetency, which determination was upheld in

plaintiff's first action. Just as clearly as denial of the writ of mandate in *Myers* was properly held not to bar the plaintiff's subsequent tort action, denial of the writ in plaintiff's first action should and does bar the instant actions.

E. *All defenses could have been asserted at the time of the administrative hearing, and claims could have been brought in the first action.*

As noted, Government Code sections 11505 and 11506 gave plaintiff the right and power to assert any defense to the incompetency charge, including defenses based on allegations that her constitutional and civil rights were being violated by defendants' actions. *Bekiaris v. Board of Education* (1972) 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480] involved a similar procedure. In that case the plaintiff was a probationary teacher. The 1972 procedure for dismissal of a probationary teacher was somewhat different than the 1980 procedure for dismissal of a permanent teacher, such as plaintiff. The 1980 procedure gave the permanent teacher a more elaborate hearing before the Commission, consisting of an administrative law judge and two lay members, whereas the dismissal hearing for the probationary teacher was before a single hearing officer.

In the *Bekiaris* case, a hearing was held before the hearing officer with the district contending that the petitioner was persistent in his violation of school rules and that such violation constituted grounds for his dismissal. In opposition, petitioner offered testimony that was not received in evidence by the hearing officer that the real reason for his termination was his exercise of his First Amendment rights. The hearing officer found that the evidence did not otherwise support the district's charges. The district's board of trustees, on the basis of the record before the hearing officer, disagreed as to the sufficiency of the evidence to support the charges, but nevertheless refused to reach the defense that petitioner was terminated because of his exercise of constitutional rights. The superior court refused to set aside the board's action.

The Supreme Court found that the hearing officer's failure to receive evidence as to the asserted reason for termination (the exercise of his constitutional rights) resulted in a legal error correctable by writ of mandate. It held that "when a probationary teacher demands a hearing relative to his impending dismissal . . . and seeks . . . to present evidence tending to show that he was dismissed . . . for the exercise of constitutional rights, that evidence must be received substantively and findings must be made concerning it." (*Bekiaris v. Board of Education, supra,* 6 Cal.3d at p. 592.) Since the primary distinction between probationary teachers and permanent

teachers is the attainment by the permanent teachers of more job security and more rights, it would hardly be logical to suggest that a right given to a probationary teacher in a dismissal hearing would not similarly be available to a permanent teacher. Thus, plaintiff was entitled to raise the issue of alleged constitutional and civil rights violations at the time of the dismissal hearing. (See also *Griswold v. Mt. Diablo Unified Sch. Dist.* (1976) 63 Cal.App.3d 648 [134 Cal.Rptr. 3].)

Here plaintiff has alleged conspiracy among the defendants who "set her up" by violating her constitutional and civil rights. Yet plaintiff admits in her complaint that the discrimination defense was not raised at the administrative hearing. Neither was the issue raised in the first action. It is just such a case as this in which such allegations must be brought at the earliest opportunity, in this case before the Commission, so that the matter can be resolved.

There can be no justification for plaintiff's position that she should be permitted to fail to assert at the administrative hearing constitutional and civil rights violations as reasons that made her termination wrongful, fail to prevail on the writ without attempting to urge or to bring before the court those reasons, and then be allowed to recover damages in this consolidated action that resulted from termination of her employment alleged to be wrongful based on those same reasons. As the court pointed out in *Westlake Community Hosp.* v. *Superior Court, supra,* 17 Cal.3d 465, 476: "If an organization is given the opportunity quickly to determine through the operation of its internal procedures that it has committed error, it may be able to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision . . .; an individual should not be permitted to endlessly increase damages by foregoing available internal remedies."

F. *The federal decision is res judicata.*

■ As we have seen, the United States Court of Appeals, Ninth Circuit, in *Takahashi* v. *Bd. of Trustees of Livingston, supra,* 783 F.2d 848 concluded that plaintiff's federal court action was barred by the res judicata effect of the prior state court judgment in the first action.

Plaintiff has cited the case of *Merry* v. *Coast Community College Dist.* (1979) 97 Cal.App.3d 214 [158 Cal.Rptr. 603] as support for her assertion that the court's acceptance of the res judicata defense in the federal court case does not compel the striking of her causes of action in this consolidated action on the basis of res judicata. In the cited case, the plaintiff alleged that the defendant college had deprived him of his property interest in a televi-

sion film series without due process by coercing him through threats and intimidation to sign a contract waiving his interest in the series. He filed an action in federal court under the Civil Rights Act and the First and Fourteenth Amendments to the United States Constitution. A summary judgment was granted, the court finding no genuine issues of material fact and concluding that the complaint did not state a federal cause of action. The plaintiff then filed in state court seeking rescission of the contract for fraud, undue influence and mistake of law. The state court sustained defendant's demurrer without leave to amend on the force of the res judicata effect of the federal court judgment.

The plaintiff contended that res judicata did not operate as a bar to his action since the federal court failed to pass on state claims and that different primary rights were involved. The defendant countered that the state claim could have been raised and considered under pendent jurisdiction and the rule against splitting causes of action should preclude plaintiff's suit in the state court. The court first noted that, "It clearly appears that the federal court would have declined to exercise its pendent jurisdiction to adjudicate plaintiff's state claims had they been raised, . . ." (*Merry* v. *Coast Community College Dist., supra,* 97 Cal.App.3d at p. 221.) The court then concluded that the summary judgment in the federal action was not a bar to the state action.

There is a very significant difference here that plaintiff ignores: the summary judgment in her federal court action was based precisely on the preclusive effect of the prior state judgment in the first action on the same cause of action. It would be absurd to say that the federal court should have granted summary judgment and dismissed the state claims for adjudication in state court when the dismissal of the federal claims was based on the preclusive effect of the existing state court final judgment in the first action. However, we do not need to decide whether the federal court judgment is res judicata since we have concluded that the state court's denial of plaintiff's petition for writ of mandate in the first action does bar these consolidated actions.

The judgment is affirmed. Defendants are awarded their costs on appeal.

Martin, Acting P. J., and Ballantyne, J., concurred.

A petition for a rehearing was denied August 18, 1988, and appellant's petition for review by the Supreme Court was denied October 12, 1988.