Filed 9/16/22  Dancler v. City of Los Angeles CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| JOHN DANCLER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B310775<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV25281) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard Fruin, Judge.  Affirmed.

John Dancler, in pro. per., for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Scott Marcus, Chief Assistant City Attorney, Blithe S. Bock, Managing Assistant City Attorney, and Shaun Dabby Jacobs, Deputy City Attorney for Defendant and Respondent.

_____

# INTRODUCTION

In 2011 John Dancler was terminated for misconduct from his job as a traffic officer with the City of Los Angeles Department of Transportation (City or LADOT). Dancler was discharged after a video, which became public, showed Dancler fondling an adult film actress while he was on duty. He unsuccessfully sought to overturn his termination through a petition for writ of mandate. Several years later Dancler filed a lawsuit against the City alleging he did not receive due process in his termination proceedings. The superior court sustained the City's demurrer to Dancler's operative complaint without leave to amend, and Dancler appealed. We affirm.

# FACTUAL AND PROCEDURAL HISTORY

A.     *Dancler's Termination for Misconduct*

The City employed Dancler as a traffic officer beginning in 1988. In March 2008, while on duty and in uniform, Dancler groped the bare breasts of an adult video actress and spanked her bare buttocks. She also straddled him. The incident was captured on video and was posted on the internet.

In April 2011 the City learned about the incident and the existence of the video after a local television reporter raised questions about Dancler's behavior in the video. LADOT conducted an investigation and served Dancler with a notice of discharge, effective July 18, 2011. According to the notice, Dancler was discharged for "Misconduct on the job (and in uniform) unfavorably reflecting on City employees when you engaged in indecent acts including groping the bare breasts,

2

spanking the bare buttocks, and being straddled by an adult video actress in public on or about March 2008."

An administrative disciplinary hearing was held pursuant to *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194. The hearing committee recommended Dancler's discharge reasoning that Dancler's job enforcing parking laws was a high-profile public position that required good judgment and integrity. The committee also noted Dancler had received other disciplinary actions during his 20-year career, including one 5-day suspension and one 15-day suspension.

B.     *Dancler's Administrative Appeal, Writ Petition and Prior Appeal*

Dancler appealed the termination decision to the City of Los Angeles Civil Service Commission. In January 2012 an administrative hearing was conducted. In April 2012 the hearing examiner issued a report finding Dancler committed misconduct and recommended his discharge be sustained. The Civil Service Commission sustained Dancler's discharge and denied his subsequent demand for reinstatement.

Dancler filed a petition for writ of administrative mandamus in August 2012. Dancler alleged the Civil Service Commission decision sustaining his discharge was "invalid because the [Commission] has proceeded without or in excess of jurisdiction and/or there was not a fair proceeding, the decision is not supported by the findings, and/or the findings are not supported by the weight of the evidence." After holding a hearing, the superior court entered judgment denying the petition. Dancler appealed. On August 19, 2014, Division Four of this Court affirmed the denial of Dancler's petition for writ of

3

mandate. (*Dancler v. Los Angeles Civil Service Commission* (Aug. 19, 2014, B250164) [nonpub. opn.].) The Court found substantial evidence supported the finding that Dancler committed misconduct and found the City did not abuse its discretion by terminating Dancler's employment.

While his appeal was pending, Dancler filed a second lawsuit in superior court against the City, alleging a single cause of action for wrongful termination. In that action Dancler alleged "[t]he City terminated [his employment] without legal, or other, justification in violation of public policy against racial discrimination, among other things, and the statutory prohibition against retaliatory discharge." After the Court of Appeal decision affirming the denial of his petition for writ of mandate became final, Dancler filed a request for dismissal without prejudice of his wrongful termination lawsuit, and the trial court dismissed the case.

### C. *Dancler's Government Claims and Current Lawsuit*

On June 17, 2019, Dancler filed a complaint with the Department of Fair Employment and Housing (DFEH). In that complaint Dancler asserted he experienced discrimination and harassment by being terminated from his employment with the City.

On August 26, 2019, Dancler filed a government claim for damages with the City alleging that because the authorization form for discharge is missing from his personnel file, he was not properly "Skellied" and "[t]he statue (sic) of limitations clock has never started, therefore I am still a city employee." The City denied Dancler's government claim as untimely because he did

4

not present his claim within six months of the incident.  The City advised Dancler he could apply for leave to present a late claim.

On October 25, 2019, Dancler filed a second government claim reiterating the allegations in his August 26, 2019 claim and asserted that his August 26, 2019 claim "was not processed." The City denied Dancler's second government claim on December 6, 2019, and explained that the Court of Appeal's decision affirming the denial of his petition for writ of mandate and sustaining his termination was a final decision.  The City again informed Dancler that he could apply for leave to present a late claim.

On January 7, 2020, Dancler filed a third government claim for damages and an application for leave to present a late claim.  The City denied Dancler's application for leave to present a late claim on January 24, 2020.

On July 6, 2020, Dancler filed the lawsuit underlying this appeal, initially alleging one cause of action for fraudulent discharge against the City and LADOT.  The City filed a demurrer.  On September 9, 2020, Dancler filed his first amended complaint for fraud, wrongful termination, and breach of implied contract.  The City filed a demurrer to the first amended complaint, and the trial court sustained the demurrer with leave to amend.

On November 24, 2020, Dancler filed his operative second amended complaint alleging causes of action for (1) fraud, (2) breach of contract and (3) gross negligence against the City, LADOT, and three additional LADOT employees:  Jaime De La Vega (then the General Manager of LADOT), James Abalos and Don Harahill.  Dancler alleged LADOT did not properly complete paperwork regarding his termination, which denied him due

5

process and rendered his termination invalid. Dancler sought reinstatement, back pay, funding to remove the video from the internet, administrative leave with pay until the video was removed, attorney fees and $5,000,000 in punitive damages.

The City filed a demurrer to the second amended complaint. The trial court sustained the demurrer without leave to amend, struck the newly added individual defendants from the complaint and entered judgment in favor of the City. The court concluded that Dancler's government claims were not timely presented, his claims were time-barred because the statute of limitations began running when Dancler was terminated, and his claims were barred under principles of claim preclusion and issue preclusion.

This appeal followed.

## DISCUSSION

A.     *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. (*Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Insurance Company* (2022) 81 Cal.App.5th 96.) We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) We assume the truth of the properly pleaded factual allegations and facts that can reasonably be inferred from those expressly pleaded. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; accord, *Centinela Freeman Emergency Medical Associates v.*

6

*Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*).)  We are not, however, required to accept the truth of the factual or legal conclusions pleaded in the complaint. (*Mathews*, at p. 768; *Centinela Freeman,* at p. 1010; *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)

Leave to amend is reviewed for abuse of discretion. (*Schifando, supra,* 31 Cal.4th at p. 1081 [explaining it is an abuse of discretion to deny leave to amend if there is a reasonable possibility a plaintiff could cure the defect with an amendment].) "The burden of proving such reasonable probability [that an amendment will cure the defect] is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

### B. *Dancler's Claims of Procedural Impropriety Are Barred By Issue Preclusion*

Dancler contends the superior court erred in sustaining the City's demurrer without leave to amend because he was not properly terminated under the LADOT Manual of Policies and Procedures (Manual) and union Memorandum of Understanding (MOU).  From that premise he argues his causes of action never accrued, his termination was never properly adjudicated and res judicata and collateral estoppel (i.e., claim preclusion and issue preclusion) do not apply.

Specifically, Dancler alleges his discharge was procedurally improper because no "bureau head" signed a Notice of Discharge, Suspension or Probationary Termination (Form 77) in conjunction with his termination.  Rather, he was given a Form 77 signed on July 11, 2018 by LADOT's then-General Manager Jaime De La Vega.  Dancler claims De La Vega lacked the

7

authority to sign the form authorizing his termination. Dancler also alleges that he did not receive proper paperwork for a *Skelly* hearing in violation of the Manual and the MOU.

Each of Dancler's causes of action is based on these alleged procedural improprieties. In his first cause of action for fraud (brought against De La Vega, Harrahill and Abalos, but not the City or LADOT), Dancler alleges that the Form 77 should have been signed by the bureau head of Parking Enforcement, Chief Jimmy Price, instead of De La Vega. Dancler also contends that his disciplinary package did not include an unsigned Form 77 outlining the charges against him, in violation of the Manual and MOU, an argument he previously made in his mandamus proceedings. Dancler's breach of contract cause of action alleges the City violated the procedures set forth in the Manual and the MOU concerning the required paperwork that must accompany the notice of termination. And in the third cause of action for gross negligence, Dancler alleges the City and LADOT committed gross negligence by upholding the findings of misconduct and termination despite knowing his termination was improper given the alleged problems with the paperwork and the termination procedure. According to Dancler, a bureau head did not properly submit Form 77 to initiate the pre-discipline process, Abalos did not have authority to chair the *Skelly* hearing and De La Vega did not have authority to approve Dancler's discharge.

To the extent Dancler argues he was wrongfully terminated due to these alleged irregularities, issue preclusion applies. (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 867 ["It is settled that the doctrine of collateral estoppel or issue preclusion is applicable to final decisions of administrative agencies acting in a judicial or quasi-judicial capacity."].) Dancler raised or could

8

have raised his allegations of irregularities (in his disciplinary paperwork and in the *Skelly* proceedings) in the previous administrative and mandamus proceedings, which were conclusive on the issue of whether he was wrongfully terminated. Issue preclusion, previously referred to as collateral estoppel, "prevents 'relitigation of previously decided issues.'" (*Samara v. Matar* (2018) 5 Cal.5th 322, 327; accord, *Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323 ["issue preclusion prevents relitigation of specific issues"]; *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [issue preclusion bars "relitigation of issues argued and decided in prior proceedings"].) Issue preclusion "applies only '(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.'" (*Samara*, 5 Cal.5th at p. 327.)

In the mandamus proceeding, Dancler alleged his termination was invalid because the City acted "in excess of jurisdiction and/or there was not a fair proceeding . . . ." He specifically argued that he was not given due process because he was not provided with an unsigned Form 77 outlining actual charges in his disciplinary paperwork for his *Skelly* hearing. In the instant lawsuit, Dancler likewise alleges he was "denied his due process" during the termination proceedings and "was not served with the proper paperwork to indicate a *Skelly* hearing" because he did not receive the unsigned copy of Form 77. Dancler alleges that because the authorization form for discharge was not in his personnel file, "[u]nder the guidelines of the [Manual] I have not been terminated." Each of these issues was either actually or necessarily decided by the mandamus proceeding.

9

Dancler claims that it was not until September 6, 2018, that he first looked at his personnel file and discovered that a "non-bureau head" signed his Form 77 in alleged violation of the Manual; he claims he newly raised this allegation in this lawsuit. However, to the extent Dancler raises new alleged irregularities that he did not previously litigate, he is precluded from litigating them in this proceeding because he could have or should have raised those irregularities in the mandamus proceeding.[1]

The fact that Dancler did not previously raise these issues "does not defeat the application of collateral estoppel. A party cannot circumvent the doctrine simply by cherry-picking which facts and theories to raise at his administrative hearing and which to reserve for a civil lawsuit, if all speak to the same issue—which in this case was the wrongfulness of [plaintiff's] discharge—and if the party has a full and fair opportunity to present all those facts for determination. . . ." (*Basurto v. Imperial Irrigation Dist.* (2012) 211 Cal.App.4th 866, 888; see *Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464, 1482 ["Since it has been finally determined through the writ procedure and through the appellate procedure that the district was entitled to dismiss plaintiff on the basis of incompetence, that judgment is binding as to all issues regarding that termination that were raised or could have been raised."].) Here, Dancler cannot "relitigate the adjudicated issue in [the current] proceeding; that his discharge was not wrongful." (*Castillo v.*

---

[1] Dancler does not contend the City unfairly prevented him from examining his personnel file. He also does not argue that the City obfuscated the facts surrounding these events such that even if he or his attorney had timely examined his personnel folder he would have been unable to ascertain what had occurred.

*City of Los* Angeles (2001) 92 Cal.App.4th 477, 486.) The trial court did not err in sustaining the demurrer on these grounds, and properly exercised its discretion in refusing to provide Dancler with another opportunity to amend the complaint.

        C.     *Dancler's Claims Are Time-barred*

Dancler's tort claims are also time-barred because the City terminated his employment in 2011, and the decision became final in 2012. In order for a plaintiff to assert personal injury claims in tort against a public entity for money or damages, a plaintiff must present a government claim to the public entity "not later than six months after the accrual of the cause of action." (Gov. Code, §§ 905, 911.2, subd. (a).) "The accrual date for presenting a government tort claim is determined by the rules applicable to determining when any ordinary cause of action accrues." (Gov. Code, § 901.) If the government claim is not filed within the six-month limit, the claimant may apply for leave to file a late claim "within a reasonable time not to exceed one year after the accrual of the cause of action and shall state the reason for the delay in presenting the claim." (Gov. Code, § 911.4, subd. (a); *Munoz v. State of California* (1995) 33 Cal.App.4th 1767, 1778 ["Filing a late-claim application within one year after the accrual of a cause of action is a jurisdictional prerequisite to a claim-relief petition."].)

Dancler first filed a government claim on August 26, 2019, seven years after his termination became final and five years after the Court of Appeal affirmed the trial court's denial of his petition for writ of mandate. His right to bring a cause of action based on wrongful termination accrued when the City terminated his employment in 2011 and the decision became final on May 10,

2012, when the Civil Service Commission adopted the recommendation to terminate Dancler. Dancler's government claim was untimely because he made the claim more than six months after his cause of action accrued. (See *Norgart v. Upjohn* (1999) 21 Cal.4th 383, 387 ["The general rule for defining the accrual of a cause of action sets the date as the time 'when, under the substantive law, the wrongful act is done' or the wrongful result occurs, and the consequent 'liability arises.'"].) Dancler's application on January 7, 2020, for leave to present a late government claim was likewise untimely because it was more than a year after his cause of action accrued. (Gov. Code, § 911.4, subd. (a).)

Dancler also failed to file each of his claims within the applicable statute of limitations for each cause of action. A cause of action for breach of written contract must be filed within four years of the alleged breach. (Code Civ. Proc., § 337, subd. (a).) A cause of action for fraud must be filed within three years of the discovery of the facts constituting the fraud. (Code Civ. Proc., § 338, subd. (d).) A cause of action for negligence must be filed within two years of the injury. (Code Civ. Proc., § 331.5; see *Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367 [common law tort claims for wrongful termination are subject to the two-year statute of limitations under Code of Civil Procedure section 335.1].) Dancler's underlying breach of contract, fraud, and negligence claims are untimely because he filed on July 6, 2020, more than eight years after his termination became final.

Dancler alleges he did not discover the alleged problems with his paperwork prior to August 2018 because he did not have the Manual and MOU in his possession until then, and he argues the statute of limitations was therefore tolled under the delayed

discovery rule.  Under the delayed discovery doctrine, a cause of action does not accrue until the plaintiff discovers, or has reason to discover, the cause of action.  (*Fox v. Ethicon Endo–Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*); see *Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 43 ["the delayed discovery rule [is] incorporated into the three-year statute of limitations for fraud claims (Code Civ. Proc., § 338, subd. (d))"].)  "A plaintiff has reason to discover a cause of action when he or she has reason to at least suspect a factual basis for its elements.  Suspicion of one or more of the elements, coupled with knowledge of any remaining elements, will generally trigger the applicable limitations period.  This refers to the 'generic' elements of wrongdoing, causation, and harm and does not require a hypertechnical approach.  Instead, 'we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.'"  (*S.M. v. Los Angeles Unified School Dist*. (2010) 184 Cal.App.4th 712, 717.)  "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110; accord, *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 192.)

The delayed discovery doctrine does not apply because Dancler's causes of action accrued at the latest on May 10, 2012, when his termination became final.  Dancler has made no claim suggesting he could not have discovered the Manual and MOU

13

provisions or the alleged improprieties with the paperwork or procedures surrounding his termination had he exercised reasonable diligence. (See *Fox, supra,* 35 Cal.4th at p. 815 ["[a] plaintiff seeking to utilize the discovery rule must plead facts to show his or her inability to have discovered the necessary information earlier despite reasonable diligence"].

## DISPOSITION

The judgment of the trial court is affirmed.


WISE, J.[*]


We concur:



PERLUSS, P. J.



SEGAL, J.

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.