[No. D058353. Fourth Dist., Div. One. Nov. 8, 2012.]

SALVADOR BASURTO, Plaintiff and Appellant, v.
IMPERIAL IRRIGATION DISTRICT, Defendant and Respondent.

## Counsel

Sutherland & Gerber and Lowell F. Sutherland for Plaintiff and Appellant.

Currier & Hudson, Andrea Naested and Melissa B. Fleming for Defendant and Respondent.

**OPINION**

**HALLER, J.—**

## I. INTRODUCTION

Plaintiff Salvador Basurto (Basurto) appeals from the trial court's order granting summary judgment in favor of defendant Imperial Irrigation District (the District) on Basurto's damages claims alleging age and/or race discrimination and wrongful termination. The trial court determined that Basurto's civil claims were barred, under principles of collateral estoppel and res judicata, by a prior adverse administrative decision of the District's governing board (District Board). In that hearing, the District Board had concluded, after an evidentiary adversarial hearing pursuant to the District's internal grievance procedures, that Basurto's termination for causing a serious vehicular accident while affected by alcohol was supported by the evidence and warranted under the District's policies regarding alcohol use and negligent operation of a District vehicle. Basurto did not raise his discrimination and wrongful termination allegations at that hearing, nor did he raise issues of claimed bias and due process violations.

Basurto challenged the administrative ruling by means of a petition for writ of mandate and civil complaint in the superior court. In the writ petition, Basurto alleged that the District's internal grievance procedures had denied him due process and that the District Board could not be impartial. He did not argue that the evidence did not support the District Board's findings. The trial court ultimately denied the writ petition, finding that Basurto had waived his due process and bias claims by failing to raise them at his administrative hearing. On the District's subsequent summary judgment motion on the civil complaint, the trial court determined that Basurto had been "afforded due process and the opportunity to raise every theory under which his right to continued employment may have been affected, including whether he was discriminated against based on his age and/or race." It therefore granted summary judgment in the District's favor on the civil complaint, citing *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61 [99 Cal.Rptr.2d 316, 5 P.3d 874] (*Johnson*) and *Takahashi v. Board of Education* (1988) 202 Cal.App.3d 1464 [249 Cal.Rptr. 578] (*Takahashi*).

■ On appeal from the trial court's judgment, Basurto primarily contends that the District Board's decision should not bar his civil claims because the District's internal complaint procedures are not of a sufficient "judicial character" to allow application of collateral estoppel or res judicata. We disagree. The administrative hearing conducted by the District Board possessed the critical attributes of a quasi-judicial proceeding, including the

ability for Basurto to be represented by counsel before an impartial panel, to raise any and all claims pertinent to his discharge, and to present evidence and cross-examine witnesses. We reject Basurto's contention that the District Board could never be impartial as a decision maker when a ruling in an employee's favor could have an adverse financial consequence to the District. If that were the case, no administrative proceeding involving an employment or disciplinary dispute could ever be valid and binding. The law does not support such a categorical invalidation of adjudications by an administrative agency. Accordingly, we affirm.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   *Basurto's Discharge and the Initial Administrative Proceeding*

The facts underlying this appeal are largely undisputed. Basurto was employed for approximately 31 years by the District as a zanjero,[1] delivering water to farmers using a District vehicle. About 8:00 a.m. on March 31, 2003, while on duty and driving a District vehicle, Basurto was involved in a collision with another vehicle, causing extensive property damage to both vehicles and personal injury to the driver of the other car. The police report on the accident indicated that Basurto admitted to the responding officer that he had consumed alcohol the previous evening. The police conducted a field sobriety examination and a "preliminary alcohol screening device" test, and determined that Basurto still had alcohol in his system, with a blood-alcohol level of 0.031 percent at the time of the accident. (Capitalization omitted.) The police concluded that Basurto "was not under the influence of an alcoholic beverage," but that he caused the accident by failing to yield the right of way. (Capitalization omitted.)

This incident prompted the District to discharge Basurto on April 18, 2003. At that time, Basurto was 55 years old. He appealed his discharge through the District's internal complaint procedures, contending that termination was too strong a penalty and that other employees who had been "compromised" had not been discharged but had received less severe discipline. Basurto's complaint was reviewed by his supervisor, the department head, the management committee, and finally, the District Board. At all levels, his complaint was denied.

Before issuing its decision on February 26, 2004, the District Board held a hearing and received testimony and documentary evidence in accordance with

---

[1] "One who is in charge of water distribution." (<http://wordsmith.org/words/zanjero.html> [as of Nov. 8, 2012].)

its internal procedures. In addition to hearing evidence of the circumstances surrounding the accident in question, the District Board also received evidence that twice before during the prior 10 years, Basurto had been disciplined for negligent vehicle operation, although generally he had received very favorable performance evaluations during that period. In denying his complaint, the District Board concluded that Basurto had violated District policies and procedures prohibiting employees from reporting to work while under the influence of alcohol, and that he had negligently operated his District vehicle.

## B.  *The Initial Writ Petition and Complaint*

Basurto filed a claim with California's Department of Fair Employment and Housing on April 13, 2004, and thereafter received a right-to-sue notice under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA). On May 25, 2004, three months after the District Board's decision became final, Basurto filed in the superior court a complaint for damages and petition for writ of mandate. Basurto alleged civil claims under the FEHA seeking reinstatement and backpay on the grounds of age and/or race discrimination, as well as a claim for wrongful termination of an employment contract. In the same filing, he petitioned for a writ of mandate pursuant to Code of Civil Procedure sections 1085 and 1094.5, arguing that he was denied due process in the administrative proceeding.

Nearly a year later, and close to the scheduled trial date of his civil claims, Basurto obtained a hearing date on his writ petition and filed his supporting memorandum of points and authorities. In his brief, Basurto argued principally that the District was subject to the requirements of the Administrative Procedure Act, Government Code section 11340 et seq. (APA), but its hearing on Basurto's complaint of wrongful discharge did not comply with the APA. In response, the District maintained that relief was barred by laches (i.e., Basurto's failure to diligently prosecute the matter), that the APA does not apply to irrigation districts, and that Basurto received a fair hearing.

In September 2005, the trial court issued a tentative decision denying an administrative writ of mandate. Although the trial court rejected the District's laches argument, it concluded that the APA did not apply to the District, and further found that substantial evidence supported the District Board's decision—save for its finding of driving under the influence, but as to that finding Basurto had failed to show prejudice. After reviewing Basurto's proposed statement of decision raising issues about the state of the record, the trial court issued an order vacating its tentative decision in February 2006. The court noted that it "appears that there is no agreed upon administrative record, as such, yet filed or established with the Court concerning [Basurto's] writ

application. Nor does it appear that the parties have moved any of their various exhibits, in whole or part, into evidence." The trial court directed the parties "to agree upon a uniform administrative record," and if they could not do so, it alternatively directed Basurto to "make a motion in this Court to settle an administrative record which may be entered into evidence." Basurto made such a motion, and the District opposed. The parties' differences focused on the authenticity of a purported transcript of Basurto's hearing before the District Board, and the admissibility of an audiocassette tape of that hearing. In April 2006, the trial court issued an order settling the administrative record, which included both the transcript and the audiotape.

After a subsequent hearing, a different trial judge granted the writ of mandate on September 20, 2006. It incorporated the September 2005 findings regarding the failure of Basurto to show a prejudicial abuse of discretion by the District Board. However, the court ruled that it was unclear from the administrative record what documents in the record had been provided to Basurto, and when, or even whether, any documents had been offered to or received by the District Board members during the hearing. The trial court concluded that the District Board "failed to proceed as required by law within the meaning of Code of Civil Procedure [section] 1094.5(b) in that [Basurto] did not have notice that the documents were being offered to the board as evidence, nor did he have notice that the board received the documents." The trial court directed the District "to either conduct a new hearing consistent with this ruling or, alternatively, reinstate [Basurto] and restore to him all salary and benefits lost as a result of [the District's] decision." The court entered judgment on the writ petition on November 8, 2006, and the writ issued on November 30, 2006.

The District neither reinstated Basurto nor held a new hearing by the return date stated in the writ. Basurto moved for the imposition of a fine and other measures to secure enforcement of the writ. The District attempted to explain its failure to respond to the writ by asserting, among other things, that attempts to hold a second hearing on Basurto's discharge had been delayed by the demands of Basurto's counsel regarding how the new hearing should be conducted, and before whom. On August 22, 2007, the original trial judge issued an order imposing a fine against the District for failure to timely respond to the writ without just excuse.

## C. *The Second Administrative Proceeding*

On June 12, 2007, the District Board conducted a second hearing on Basurto's discharge. In response to concerns expressed by Basurto's counsel regarding improper ex parte contacts between the District Board and the District's counsel, the District had earlier substituted new outside counsel to

handle the second administrative proceeding. Basurto's counsel also had made a number of other procedural demands including, among other matters, a hearing before an administrative law judge rather than the District Board (which Basurto claimed was inherently biased), access to certain witnesses, the use of a certified court reporter, and the admission (or exclusion) of certain evidence. The District acceded to some of Basurto's requests and rejected others. It offered to have the matter heard before a state-certified neutral instead of the District Board, but Basurto declined that offer.

The second hearing was held before the District Board, which consisted almost entirely of new members; only one of the members had participated in Basurto's previous hearing. At the outset, and expressly in response to one of the concerns Basurto's counsel had raised in his earlier written communications, the District's counsel inquired as follows of the District Board members: "Are there any Board members that have a financial or personal interest in this matter? That's a no. Are there any Board members who have had any discussions with any attorneys representing [the District] that would in any way bias you or make you unable to be impartial and fair in this matter? That's a no or a shake of the head as well."

During the hearing, which lasted about seven hours and was transcribed by a certified court reporter, both sides were represented by counsel; the burden of proof and evidentiary procedures were explained; objections to the admissibility of evidence were considered and ruled upon; documents were received; deposition testimony was read into the record; witnesses were called by both sides, testified under oath and were subject to cross-examination; District Board members were able to ask questions; and counsel were allowed to present opening and closing statements. As occurred at the first hearing, the District Board heard evidence that Basurto had received very favorable performance evaluations over the years, but also that he had been disciplined twice before for negligent operation of a District vehicle. Additionally, the District Board received evidence that given the rate of alcohol metabolism, Basurto's blood-alcohol level was 0.08 percent or higher at the time he reported for work at 6:00 a.m. on the date of the accident. At no time did Basurto present evidence or argument regarding his discrimination and wrongful termination claims. Apart from merely alluding to his concern that the District Board could not be impartial, Basurto's counsel voiced no objection to proceeding at that hearing, he made no argument and presented no evidence supporting his due process and bias allegations, and he did not voir dire the District Board members on these issues.

On July 10, 2007, the District Board issued a six-page decision concluding that "the penalty of discharge imposed was appropriate," and denying Basurto's grievance and affirming his discharge. The District Board found that Basurto

had violated District policy in that he "was affected by prior alcohol use" and was "under the influence of alcohol" at the time of the accident, had operated a District vehicle while under the influence of alcohol, and had negligently damaged District property. The District Board cited the District policies and procedures that Basurto had violated. It detailed the evidence it had examined and the witnesses that testified. It specifically found that the penalty imposed on Basurto was not applied differently to Basurto "than it historically has been applied to other similarly situated District employees," and noted that it had taken into account Basurto's "long service and performance as an employee of the District."

#### D.   *The Second Writ Petition and Amended Complaint*

Following issuance of the District Board's decision, Basurto commenced a new proceeding with the filing of a second petition for writ of mandate against the District. Thereafter, he filed a "First Amended Complaint for Damages and Supplemental Petition for Writ of Mandate" (first amended complaint) in the first action. Basurto alleged that the second writ petition filed under a different case number was a " 'protective Action' so as to prevent any argument on procedural grounds contesting" the supplemental writ petition. In its answer to the amended complaint, the District challenged the propriety of Basurto's "supplemental" petition for writ of mandate, on the ground that the first writ petition already had been fully adjudicated and thus could not be "supplemented." On October 5, 2007, pursuant to the parties' stipulation, the trial court ordered the two matters to be consolidated under the case number for the first action. Basurto's amended complaint for damages was substantially similar to his initial complaint in all ways material to this appeal.

More than 16 months later, on February 24, 2009, Basurto filed a notice of hearing on the second writ petition. In support of his petition, Basurto indicated that he was not asking the trial court to set aside the District Board's decision to terminate him, but rather stated that the purpose of the petition was to avoid any collateral estoppel effect of the District Board's decision on his civil discrimination claims. In arguing that the District Board's decision should not be given collateral estoppel or res judicata effect, Basurto maintained that the District Board's hearing violated due process in that, among other reasons, the hearing was not held before an impartial hearing examiner, and the District Board had no procedures whereby Basurto could effectively raise his age discrimination claims. The District responded that the petition should be denied because it was supported by substantial evidence, and the hearing comported with due process.

On June 30, 2009, the trial court denied Basurto's petition for mandamus relief. The court found that Basurto had "waived his due process objections

and bias issues to the hearing and its collateral estoppel effect by not raising these issues before the Board at the time of the hearing." Basurto thereafter filed a petition for writ of mandate in this court, raising essentially the same arguments he raised in his trial court writ petition. We summarily denied his petition on October 9, 2009, noting that Basurto "has an adequate remedy by way of appeal."

### E. *The Summary Judgment Motion and the Trial Court's Order*

After Basurto's writ petition in this court was denied, the District moved for summary judgment, or in the alternative, summary adjudication as to Basurto's civil claims for damages. The District primarily argued in support of its motion that Basurto's age and race discrimination claims were barred by res judicata and/or collateral estoppel, in that Basurto could and should have raised those claims before the District Board, but failed to do so. The District relied in particular on *Johnson, supra*, 24 Cal.4th 61, which held that "when, as here, a public employee pursues administrative civil service remedies, receives an adverse finding, and fails to have the finding set aside through judicial review procedures, the adverse finding is binding on discrimination claims under the FEHA." (*Id.* at p. 76.) In support of its res judicata argument, the District cited *Takahashi, supra*, 202 Cal.App.3d 1464, in which a public school teacher's civil discrimination claims were barred by the trial court's denial of her writ petition challenging an adverse administrative ruling. (*Id.* at pp. 1474, 1481–1485.)

In response, Basurto contended that the District Board's decision should not be given estoppel effect, for several reasons. He conceded that his race and age discrimination claims were not raised during the District Board hearing, but argued there was no basis for raising them at that time because the District Board's internal procedures were designed to address only an employee's performance or behavior issues, not the District Board's conduct. Further, he asserted that the District Board's hearing was not the type of "real administrative hearing" that, under *Johnson* and other case law, afforded " 'extensive and detailed procedural protections' " sufficient to give rise to collateral estoppel or res judicata effect.

In an order dated July 1, 2010, the trial court granted the District's motion for summary judgment. The trial court found that under *Johnson, supra*, 24 Cal.4th 61, and *Takahashi, supra*, 202 Cal.App.3d 1464, collateral estoppel and res judicata barred Basurto's entire first amended complaint. The trial court concluded that the District Board had held a "full evidentiary hearing" regarding Basurto's termination "during which he was afforded due process and the opportunity to raise every theory under which his right to continued

employment may have been affected, including whether he was discriminated against based on his age and/or race. . . . Plaintiff failed to raise issues of age and/or race discrimination at the termination hearing." Further, the trial court noted that Basurto had failed to have the District Board's decision vacated by writ petition: "As a result, all of the issues that could have been or should have been raised as a defense to [Basurto's] termination during the administrative proceeding, including issues of discrimination and his wrongful termination, are collaterally estopped from being raised in the First Amended Complaint. Further, the causes of action in the First Amended Complaint concern the same primary right at issue in the administrative and writ proceedings and therefore they are barred by the doctrine of res judicata and the prohibition against splitting a cause of action."

The trial court entered judgment on Basurto's claims on August 12, 2010.

## III.   DISCUSSION

### A.   *Standard of Review*

On this appeal, we are asked to consider whether the trial court erred in granting summary judgment on the ground that Basurto's civil claims for discrimination and wrongful termination are barred as a matter of law by the doctrines of collateral estoppel and res judicata. We review the granting of the District's summary judgment motion de novo, considering all of the evidence presented by the parties, except that which was properly excluded by the trial court. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) "We are not bound by the [trial] court's stated reasons for its summary judgment ruling; rather, we examine the facts before the trial court then independently determine their effect as a matter of law." (*O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 501 [44 Cal.Rptr.3d 531].)

### B.   *Basic Principles of Collateral Estoppel*

■    Collateral estoppel has been described as "one aspect of the concept of res judicata." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. 3 [272 Cal.Rptr. 767, 795 P.2d 1223] (*Lucido*).) "Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings." (*Id.* at p. 341.) The threshold prerequisites for its application are well known: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom

preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Ibid.*) The doctrine of collateral estoppel, or issue preclusion, also rests on fundamental public policies, including "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." (*Id.* at p. 343.) Accordingly, the propriety of invoking collateral estoppel depends not simply on a determination of whether its threshold requirements are met, but also on consideration of whether applying it "in a particular circumstance would be fair to the parties and constitutes sound judicial policy." (*Ibid.*)

■ It has long been recognized that collateral estoppel not only prevents relitigation of court findings, but also may be applied to the decision of an administrative agency when that agency is acting in a judicial or quasi-judicial capacity. (*People v. Sims* (1982) 32 Cal.3d 468, 479 [186 Cal.Rptr. 77, 651 P.2d 321] (*Sims*); see *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481 [111 Cal.Rptr.2d 870] (*Castillo*); *Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 242 [244 Cal.Rptr. 764].) Giving preclusive effect to prior administrative findings in appropriate cases furthers the policies underlying the collateral estoppel doctrine, in that it "promote[s] judicial economy by minimizing repetitive litigation," prevents "the possibility of inconsistent judgments which may undermine the integrity of the judicial system," and protects parties "from being harassed by repeated litigation." (*Sims, supra,* 32 Cal.3d at pp. 488–489; see *Johnson, supra,* 24 Cal.4th at p. 75 [the value of "enforcing repose" is furthered by precluding a FEHA claim that would relitigate facts already determined by an administrative agency].)

However, California courts have also emphasized that an administrative decision may operate as a bar to later judicial relief only when the court is first satisfied that the administrative proceeding leading to that decision had a sufficiently "judicial" character. In other words, administrative findings may be given preclusive effect only when the administrative agency " 'is *acting in a judicial capacity* and *resolves disputed issues of fact* properly before it which the parties have had an *adequate opportunity to litigate.*' " (*Sims, supra,* 32 Cal.3d at p. 479, original italics, quoting *United States v. Utah Constr. Co.* (1966) 384 U.S. 394, 422 [16 L.Ed.2d 642, 86 S.Ct. 1545]; see *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 113 [84 Cal.Rptr.3d 734, 194 P.3d 1026] (*McDonald*); *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 944 [38 Cal.Rptr.3d 220, 126 P.3d 1040] (*Pacific Lumber*).) "Indicia of [administrative] proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record

of the proceeding; and a written statement of reasons for the decision." (*Pacific Lumber, supra,* 37 Cal.4th at p. 944.)

For the most part, Basurto does not contest that the threshold requirements for the application of collateral estoppel are met in this case. Rather, he contends that the District Board's hearing was not sufficiently "judicial" to be accorded collateral estoppel effect. He argues, in particular, that he was denied due process by the District's failure to comply with APA procedures. Additionally, he contends that the District Board was inherently biased and could not be impartial in determining whether his discharge was justified. For the reasons explained below, we conclude that these contentions are belied by the record. Because we also conclude that the other requirements for the application of collateral estoppel are satisfied, we affirm the trial court's judgment.

### C. Summary of the Administrative Process and Judicial Review

As the foregoing authority makes clear, determining whether a prior administrative decision properly may bar later civil claims entails an evaluation of the nature and scope of the agency's internal administrative proceeding. To provide some context for this analysis, we briefly summarize the legal framework governing Basurto's administrative remedies and the prerequisites for pursuing his FEHA and wrongful termination claims.

Employees who believe they have suffered discrimination at the hands of their employers and wish to file civil claims for damages under the FEHA must first exhaust their administrative remedies by filing a complaint with the Department of Fair Employment and Housing (DFEH) and obtaining a right-to-sue notice. (See, e.g., *Rojo v. Kliger* (1990) 52 Cal.3d 65, 72, 83 [276 Cal.Rptr. 130, 801 P.2d 373]; *Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 63 [105 Cal.Rptr.2d 652]; Gov. Code, §§ 12960, 12965, subd. (b).) Employees also may, *but are not required to,* pursue internal administrative remedies offered by their employer. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074 [6 Cal.Rptr.3d 457, 79 P.3d 569] [municipal employee need not exhaust city's internal remedies prior to filing a complaint with DFEH].) However, if they voluntarily choose to first obtain relief by means of the employer's internal procedures, they must fully exhaust that avenue of relief. This entails not merely exhausting the administrative remedy itself, but also the *judicial* remedies—petitioning for an administrative writ of mandate and appeal from any order on that petition—that are the exclusive means of reviewing any administrative decision. (See *Johnson, supra,* 24 Cal.4th at p. 70 [exhaustion of judicial remedies is necessary to avoid giving binding effect to the agency's decision].) *Johnson* makes clear that failure to set aside an agency's quasi-judicial

decision will render that decision final and binding on a plaintiff's later FEHA claims. (*Johnson*, at p. 76.)

In this case, Basurto not only filed a claim with the DFEH and obtained a right-to-sue notice, he also opted to challenge his discharge under the District's internal procedures. At his second administrative hearing, he admittedly did not raise his discrimination and wrongful termination claims. The District Board ruled against Basurto, and set forth its decision concluding that Basurto's discharge was an appropriate penalty, based on the following findings, among others: (1) Basurto was under the influence of alcohol at the time of the accident; (2) Basurto caused an accident resulting in major damage to property and serious personal injury to the driver of the other vehicle; (3) Basurto was in violation of the District's policies regarding the use of alcohol; (4) Basurto violated District policy in negligently causing injury to District property; and (5) the penalty of discharge had not been applied to him differently than to other similarly situated District employees.

Basurto then petitioned the trial court for a writ of mandate, but only to avoid the collateral estoppel effect that, under *Johnson*, otherwise would be accorded the District Board's decision. Specifically, he argued that he was denied due process and an impartial hearing officer; he did not, however, assert that the District Board's findings were not supported by the weight of the evidence. The trial court found he had waived his due process and bias arguments by not raising them at the hearing. Based on Basurto's failure to have the District Board's decision set aside, the trial court thereafter granted summary judgment against Basurto, holding that the District Board's decision, and Basurto's failure to have it set aside, barred his civil damages claims.

### D. *The District's Internal Grievance Procedures Are Sufficiently "Judicial" in Character for Collateral Estoppel to Bar Basurto's Civil Damages Claims*

We now turn to Basurto's principal contention that the District failed to show its internal complaint process possesses the indicia of a "real" quasi-judicial proceeding so as to bar Basurto's civil claims for damages. On this point, Basurto makes two arguments: First, the District failed to utilize the procedures contemplated in the APA, and second, the District Board was inherently biased, requiring that the hearing be held before an independent decision maker. We conclude that neither of these arguments has merit, that Basurto had a full and fair opportunity to present any and all challenges he may have had to his discharge at the hearing before the District Board, and that his claim of bias is purely speculative.

At the outset, we agree with Basurto that the party asserting the defense of collateral estoppel bears the burden of establishing that its requirements have been met. (*Lucido, supra,* 51 Cal.3d at p. 341.) He is also correct that it was the District's burden to show that it was entitled to judgment as a matter of law. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) But we summarily reject Basurto's contention that the District presented "*no* evidence" to establish the judicial character of its internal proceeding. (Italics added.) The record refutes this assertion. For example, the District's separate statement is supported by references to evidence showing the nature and extent of the hearing held before the District Board, including a description of the broad scope of evidence presented by both sides at the hearing, and in particular, of the evidence demonstrating that Basurto was not treated differently than other similarly situated employees. Moreover, the transcript of Basurto's hearing reveals that the District Board was expressly asked about potential conflicts of interest, that the members denied any such conflict or bias, and that Basurto made no effort to establish otherwise. As we will explain, this constitutes a sufficient prima facie showing to support summary judgment in the absence of any demonstration by Basurto raising a material question of fact on these issues. (See, e.g., *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 353 [94 Cal.Rptr.3d 424] (*Y.K.A. Industries*) [once moving party makes prima facie showing of nonexistence of any material, triable fact, burden shifts to opponent to demonstrate existence of such fact].)

### 1. *The APA Does Not Apply to the District*

■ Basurto's contention that the District was obliged to comply with APA-mandated procedures has no basis in the law. The trial court correctly concluded, in denying Basurto's second writ petition, that the APA does not apply to the District. The APA provides: "Except as otherwise expressly provided by statute: [¶] (a) This chapter applies to all agencies of the state." (Gov. Code, § 11410.20, subd. (a).) It also specifies, however, that the APA "does not apply to a *local agency* except to the extent the provisions are made applicable by statute," with "local agency" defined as, among other things, a "*district*, public authority, public agency." (Gov. Code, § 11410.30, subds. (b), (a), italics added.)

Basurto contends that in 1997, the APA's reach was expanded to cover all state agencies, unless specifically excepted. But "local agencies" such as "districts" *were* expressly excluded from this expansion of coverage. (See Gov. Code, § 11410.30.) Such agencies as the District were excluded, as the legislative comments to this section of the APA observe, "because of the very different circumstances of local government units when compared to state agencies." (Cal. Law Revision Com. com., 32D West's Ann. Gov. Code

(2005 ed.) foll. § 11410.30, p. 272.) The fact that a number of statutes have since made the APA expressly applicable to various "local agencies" (such as school districts) does not help Basurto. (See, e.g., Ed. Code, §§ 44944 [suspension or dismissal of permanent employee by school district], 87679 [evaluation, dismissal and imposition of penalties on personnel employed by community college district].) If anything, these provisions merely highlight that, absent a similar requirement in the Water Code, local irrigation districts are "local agencies" excluded from coverage under the APA.[2]

The cases cited by Basurto, which refer to irrigation districts as "state agencies," are not helpful in determining whether the APA's procedures are applicable to district proceedings. First, none of these cases addresses that specific question. Second, we note that other courts have recognized that water districts are not considered state agencies for all purposes. (See, e.g., *Garrett v. Superior Court* (1974) 11 Cal.3d 245, 248 [113 Cal.Rptr. 152, 520 P.2d 968] [holding that Riverside County's flood control and water conservation district is a local agency for purposes of the venue provision in Code Civ. Proc., § 394].)

Basurto also insists that even if the District was not required to follow APA procedures, it should have done so because it would be good policy. At a minimum, Basurto contends (quoting *Nightlife Partners, Ltd. v. City of Beverly Hills* (2003) 108 Cal.App.4th 81, 91 [133 Cal.Rptr.2d 234]), that the APA is " 'helpful as indicating what the Legislature believes are the elements of a fair and carefully thought out system of procedure for use in administrative hearings.' " That may be so, but if the APA is not applicable, the only relevant inquiry is whether the procedures *actually followed* by the District provided adequate procedural safeguards and opportunities for Basurto to be heard. If they did, then under the guidelines set forth in cases such as *Sims, supra,* 32 Cal.3d at pages 479–480, and *Pacific Lumber, supra,* 37 Cal.4th at page 944, the administrative hearing was sufficiently "judicial" in character to warrant the application of collateral estoppel. It is to that inquiry that we now, therefore, turn.

---

[2] Water Code section 20570 is not such a provision. That statute, which generally "reaffirmed that [irrigation] districts are state agencies" (Wat. Code, § 20570), was enacted decades before Government Code section 11410.30. As the trial court concluded in its tentative decision on Basurto's first writ petition (later vacated for other reasons), "[t]he legislature was, presumably, aware of Water Code §20570 when it enacted §11410.30; nevertheless, §11410.30 provides a self-contained definition of local agencies exempted from the APA." It is well established that "a more recent provision is typically more persuasive than an older one," and the courts will "give effect to a specific statute relating to a particular subject in preference to a general statute." (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1504 [82 Cal.Rptr.2d 368]; Code Civ. Proc., § 1859 [in construing statutes, "when a general and particular provision are inconsistent, the latter is paramount to the former"].)

## 2. *The District's Evidentiary Hearing Afforded Basurto Due Process*

Rather than explain why the procedures the District actually employed in his case denied him due process, Basurto merely argues that because the procedures set forth in policy and procedure No. 4351 of the District's Manual of Operations are not identical to APA procedures, they cannot support the application of collateral estoppel so as to bar his civil claims. Basurto cites no law supporting this proposition, and more importantly, he provides no rebuttal to the District's showing that his second administrative hearing in fact bore many similarities to a judicial proceeding. In other words, Basurto failed to raise any triable issue of material fact regarding the alleged inadequacies of the District's procedures that might otherwise have precluded a grant of summary judgment on estoppel grounds. (See, e.g., *Y.K.A. Industries, supra,* 174 Cal.App.4th at p. 353.)

Whatever type of procedure might be contemplated by the District's policy and procedure No. 4351, the second hearing the District *actually provided* to Basurto had many of the indicia of an actual trial, particularly in comparison to the first hearing. First, Basurto does not and cannot dispute that he had actual notice of the charges against him and the subject matter of the hearing. Second, although Basurto complains about the lack of formal discovery under the District's internal procedures, the fact is that in the years preceding the second administrative proceeding, the parties conducted substantial discovery on issues relevant to his discharge, including the discrimination allegations. All of this discovery was available to Basurto at the time of his second hearing.

Third, prior to the second hearing, Basurto's counsel corresponded with the District's counsel on a number of issues, including Basurto's specific concerns about the procedures to be used at the hearing, his access to witnesses, and the impartiality of the District Board members. Many of the additional items Basurto requested tracked his position that the District Board should conform to the APA. In response to these concerns, the District undertook the following: (1) substituted new counsel for the District, to address Basurto's complaint that its prior counsel had improper ex parte contact with District Board members; (2) provided a court reporter; and (3) provided Basurto with documents and a list of witnesses.

At the nearly seven-hour-long hearing, both sides were represented by counsel, who gave opening and closing statements. The District used outside counsel to prosecute the matter. The nature of the proceeding (specifically, that it was a de novo hearing and the District Board was not to consider what occurred at the prior hearing) was fully explained, as was the burden of proof. The administrative record was clarified at the outset. Both sides were

able to call witnesses and cross-examine the other side's witnesses, all of whom testified under oath; documents were entered into evidence; and objections were raised, considered and ruled on by the District Board. An official transcript of the proceedings was prepared. The District Board issued a nearly six-page written decision, signed by the District Board president, that recited the evidence considered, identified the witnesses who appeared, and set forth specific factual findings and conclusions, with citation to District policies and procedures.

This hearing was far more thorough, and provided far more procedural safeguards, than Basurto's initial administrative hearing, at which he represented himself, no witness was sworn, there was no clarity as to the evidence considered and relied upon by the District Board, and there was no court reporter. The procedures actually followed at the second hearing are, in fact, substantially similar to those Basurto contends are required under the APA, and to those outlined by the California Supreme Court in *Sims, supra*, 32 Cal.3d at pages 479–480, and *Pacific Lumber, supra*, 37 Cal.4th at page 944. Basurto appears to rest his due process argument on the sole fact that the District's *written* policies and procedures do not themselves contain all these safeguards, even though he actually benefitted from those protections at his hearing. This argument is unpersuasive and unsupported by any authority.

■ On the contrary, California precedent makes clear that an administrative hearing, to qualify as sufficiently "judicial" for collateral estoppel purposes, need not be identical to a judicial trial, so long as basic due process considerations are satisfied. In *Sims, supra*, 32 Cal.3d 468, the California Supreme Court considered whether a hearing conducted by the State Department of Social Services (DSS) under the "fair hearing" statute (Welf. & Inst. Code, § 10950) was of a sufficiently "judicial character" to permit collateral estoppel to attach to its decision. Even though, by statute, the APA does not apply to such hearings, and the rules of evidence are not applicable (Welf. & Inst. Code, §§ 10953, 10955), the *Sims* court found that the requirements of collateral estoppel were met when the hearing was "a judicial-like adversary proceeding," in that it was conducted in an impartial manner, testimony was received under oath or affirmation, the parties were allowed to call, examine and cross-examine witnesses, make oral and written argument, and a verbatim record of the proceeding was created. (*Sims, supra*, at pp. 479–480.) In these respects, the parties were provided with an adequate opportunity to fully litigate their claims—even though the county in that case failed to present evidence or participate in the hearing because of its claim that the DSS lacked jurisdiction. (*Id.* at pp. 474, 481.) Further, the hearing officer provided a written statement of decision that, in an adjudicatory manner, applied existing rules to the facts of the case. (*Id.* at p. 480.)

It is undisputed that Basurto's hearing had virtually identical characteristics. We therefore conclude that Basurto was provided with due process at his second administrative hearing.

3. *Basurto's Claim That the District Board Was Inherently Biased Is Speculative and Unsupported by Law*

The second focus of Basurto's complaint about the District's internal grievance procedures is on what he perceives to be the inherent bias of the District Board as adjudicator. According to Basurto, the District Board can never be impartial in deciding an employee's grievance when a decision in favor of the employee could result in a substantial financial penalty to the District, in the form of backpay, future wages, benefits, and attorney fees. We disagree.

If Basurto were correct, then no administrative agency could ever adjudicate employee disputes that might result in the agency's liability and financial compensation to the employee. Yet, statutory and case law long have recognized the ability of an agency to internally adjudicate employment and other matters, even where a result favorable to the other party may result in a financial gain for that party and a loss for the agency (or the public fisc). Thus, in *Johnson*, collateral estoppel was applied where the employee's grievance was decided by the city's personnel board. (See *Johnson, supra*, 24 Cal.4th at p. 66.) In *McDonald, supra*, 45 Cal.4th 88, the Supreme Court noted with approval that the community colleges' internal grievance procedures, with final review by the chancellor, "afford a complainant . . . a full opportunity to formally or informally resolve a dispute." (*Id.* at pp. 104–105; see *Westlake Community Hospital v. Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] [holding that doctor at private hospital was required to set aside internal tribunal's revocation of her privileges before maintaining a damages action].) The type of hearing at issue in *Sims* may be conducted by an administrative law judge, but the relevant statute provides that the director of the agency may instead designate himself or herself for that purpose. (See Welf. & Inst. Code, §§ 10950, 10953.) More pertinent to the present case, the boards of directors of irrigation districts have long been empowered to act "in a quasi-judicial capacity" in matters relating to employment. (*Wilbur v. Board of Directors* (1928) 94 Cal.App. 511, 519 [271 P. 514], italics omitted; see Wat. Code, § 22225 [empowering irrigation districts "to perform all acts necessary to carry out fully" their statutory functions].)

Accordingly, we reject Basurto's contention that the District Board is incapable of being impartial in resolving a dispute like this one. We also conclude that Basurto has failed to present any evidence that the board in fact

was biased in this case.[3] The evidence highlighted by the District demonstrates the opposite. First, we note that the members participating in the second hearing were all new to the board, and had not participated in the first hearing, with one exception. Second, the District's general counsel asked the members whether they had a personal or financial interest in the case, or whether they had any ex parte communications with District attorneys that might have created a bias or conflict of interest. The members uniformly denied any such conflicts or bias—a fact noted in the District Board's written decision. Basurto made no separate inquiry of the members on this issue, and he introduced no evidence suggesting that any of the members had in any way been influenced by District counsel or otherwise.[4]

Basurto complains that the District's manual specified no procedure whereby he could have raised the issue of bias. Regardless of whether the District had a written policy or procedure specifically addressing that question, nothing prevented Basurto's counsel from raising the issue or examining the members individually on that matter. Indeed, Basurto's counsel alluded to the bias issue in his opening statement, and could well have examined the members individually, just as the District's general counsel did, but he chose not to do so.

In these circumstances, we are persuaded that the District met its burden of demonstrating that Basurto's grievance was adjudicated by a fair and impartial panel.

---

[3] It bears noting in this regard that the District offered Basurto the opportunity to have his case heard by a state-certified neutral—an offer he declined.

[4] For these reasons, Basurto's reliance on cases such as *Ward v. Village of Monroeville* (1972) 409 U.S. 57 [34 L.Ed.2d 267, 93 S.Ct. 80] is misplaced. *Ward* involved a situation in which the mayor of the village acted as a judicial officer in criminal proceedings in which a conviction could result in fines and penalties which constituted a "major part of village income." (*Id.* at p. 58.) *Tumey v. Ohio* (1927) 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437] presented an even more stark instance of a judge's personal pecuniary interest in obtaining a conviction, as that case involved an instance where the mayor's own salary and costs as judge were covered by such fees and fines. (*Id.* at p. 520.) This case presents a very different set of facts. Not only did the District adduce prima facie evidence at the hearing that the District Board members had no such pecuniary interest, either personally or as managers of the District, but also, the very purpose of the District's internal grievance procedures is to *minimize* costs to the District by ensuring that any error in discharging an employee may be quickly corrected. (See *Westlake Community Hospital v. Superior Court, supra,* 17 Cal.3d at p. 476.) Basurto presented no evidence that the cost to the District of rehiring a wrongly terminated employee was so substantial as to create a bias in the District Board toward ruling against employees in these types of cases.

E. *The Threshold Requirements for Application of
Collateral Estoppel Are Met*

1. *Basurto Does Not Dispute That the District Board Considered and
Decided the Same Issue Underlying His Civil Claims*

For collateral estoppel to apply, the District was required to show that the issues actually litigated before and decided by the District Board are identical to those underlying Basurto's civil claims. (*Lucido, supra,* 51 Cal.3d at p. 341.) Basurto makes no argument that these elements were not established, and the record provides ample support that they were.[5]

■ "The 'identical issue' requirement addresses whether 'identical factual allegations' are *at stake* in the two proceedings . . . ." (*Lucido, supra,* 51 Cal.3d at p. 342, italics added.) At the heart of both Basurto's administrative proceeding and his civil lawsuit is the issue of the wrongfulness of his discharge. In both fora, Basurto alleged that, notwithstanding his admitted responsibility for the accident, his conduct did not warrant discharge, and that other employees who had been found with drugs or alcohol in their systems did not lose their jobs. Therefore, the "identical issue" requirement is met. (See *Castillo, supra,* 92 Cal.App.4th at pp. 481–482 [issue before agency of wrongfulness of discharge was held to be identical to issue underlying plaintiff's FEHA claim even though former was not based specifically on age or race discrimination].)

The same is true for the "actually litigated" and "necessarily decided" elements. (*Lucido, supra,* 51 Cal.3d at p. 341.) An issue is "actually litigated" when it " 'is *properly raised,* by the pleadings and otherwise, and is submitted for determination, and is *determined* . . . . A determination may be based on a *failure of . . . proof* . . . .' [Citation.]" (*Sims, supra,* 32 Cal.3d at p. 484, original italics.) The issue is considered to have been "necessarily decided" if it was not " 'entirely unnecessary' " to the judgment in the prior proceeding. (*Lucido, supra,* 51 Cal.3d at p. 342.) Here, Basurto raised in his administrative complaint that discharge was too severe a penalty, and that he was being treated differently than other similarly situated employees. At the hearing, the District Board received evidence of, among other things, the District's "last chance" policy that provided employees who had been found to misuse drugs and alcohol another opportunity to conform their conduct to District policy without discharge, under certain circumstances. In an effort to

---

[5] There is also no dispute that the administrative hearing and the lawsuit involved the same parties—Basurto and the District. (See *Lucido, supra,* 51 Cal.3d at p. 341.)

demonstrate that Basurto had not been treated disparately, the District presented evidence showing that the only other employee who had been found to have alcohol in his system and to have caused a serious vehicle accident was also discharged. Additionally, the District presented evidence of Basurto's involvement in two prior vehicle accidents. Basurto's counsel cross-examined the District's witnesses on these issues, and in particular, attempted to elicit testimony to support Basurto's contention that he should have been given another chance, particularly in light of his highly favorable performance reviews over the years. The District Board weighed all this evidence and concluded that Basurto's discharge was justified under the facts of the case, and explicitly concluded that he had not been treated differently than other similarly situated employees.

The fact that Basurto never raised his specific age and/or race discrimination allegations at his administrative hearing does not defeat the application of collateral estoppel. A party cannot circumvent the doctrine simply by cherry-picking which facts and theories to raise at his administrative hearing and which to reserve for a civil lawsuit, if all speak to the same issue—which in this case was the wrongfulness of Basurto's discharge—and if the party has a full and fair opportunity to present all those facts for determination (which, as we explained previously, Basurto was given here). As the Supreme Court observed long ago: "[E]ven though the causes of action be different, the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue *and every matter which might have been urged to sustain or defeat its determination.*" (*Pacific Mut. Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 724–725 [285 P.2d 636], italics added.)

The case of *Castillo, supra,* 92 Cal.App.4th 477, is instructive here. In *Castillo,* the trial court granted summary judgment against the plaintiff in his wrongful termination action on the ground that his claims based on age, race and national origin discrimination were barred by a prior administrative ruling that he had been discharged for nondiscriminatory reasons relating to his performance. (*Id.* at pp. 479–480.) At his administrative hearing, the plaintiff presented evidence showing alleged disparate treatment by his supervisor, although the plaintiff did not attribute that disparity to age, race or national origin. (*Id.* at p. 482.) Nevertheless, the court held that collateral estoppel barred his FEHA discrimination claims. It determined: "Castillo has not shown that he was prevented from introducing admissible evidence relevant to [the issue of discrimination]." (92 Cal.App.4th at p. 482.) Furthermore, the hearing officer determined that Castillo's discharge was for

"appropriate" reasons; "if the hearing examiner were to have found that the reasons for the discharge were merely a pretext for discrimination, she would not have found the discharge was appropriate." (*Ibid.*) Thus, the question whether Castillo's discharge was justified on nondiscriminatory grounds was actually litigated and necessarily decided.

Also instructive is *Takahashi, supra*, 202 Cal.App.3d 1464. Although that decision rested principally on res judicata principles, the case bears substantial similarity to this one. In *Takahashi*, a longtime public school teacher was discharged on competency grounds, after a hearing before the Commission on Professional Competence. (*Id.* at p. 1470.) At the hearing, the teacher challenged the commission's jurisdiction only; no mention was made of any constitutional or civil rights defense. (*Ibid.*) After the commission ruled against her, the teacher petitioned the trial court for writ of mandate, but again, did not raise her wrongful termination defenses, but continued to challenge the commission's jurisdiction only. (*Id.* at pp. 1470–1471.) When the court denied her petition and the denial was affirmed on appeal, she sought to pursue civil claims that she was not terminated for good cause. (*Id.* at pp. 1471–1472.) The trial court granted summary judgment on res judicata grounds. (*Id.* at pp. 1472–1473.) The *Takahashi* court upheld that ruling on appeal. It concluded, among other things, that all of the plaintiff's civil claims arose "in conjunction with or as a result of the alleged wrongful termination of her employment," and thus involved the same "primary right" as the one at stake in the administrative proceeding. (*Id.* at pp. 1475–1476.) Further, it held that the plaintiff had the right to interpose any defense to her termination at her commission hearing, and the fact that she failed to do so did not preclude application of res judicata to the commission's decision. (*Id.* at pp. 1476, 1481–1482.) " 'It was never contemplated that a party to an administrative hearing should withhold any defense then available to him or make only a perfunctory or "skeleton" showing in the hearing and thereafter obtain an unlimited trial de novo, on expanded issues, in the reviewing court.' " (*Id.* at p. 1481, quoting *Bohn v. Watson* (1954) 130 Cal.App.2d 24, 37 [278 P.2d 454].)

So too, here, nothing prevented Basurto from presenting evidence that his discharge was attributable to age or race discrimination. The fact that the District Board received evidence addressing the question whether Basurto had received harsher punishment than others who had engaged in similar conduct refutes Basurto's position that the District's procedures did not contemplate that such issues could be raised. Basurto's core contention underlying his internal grievance was that in discharging him, the District had treated him differently than other similarly situated employees—i.e., that the District's stated reason for his termination (being under the influence) was, in essence, pretextual. It was therefore incumbent upon him to present at his hearing any facts or theories supporting his contention that he had been unfairly or

disparately punished, including any evidence of age or race discrimination. Had Basurto presented evidence of discriminatory policies or practices by the District, the outcome of the administrative hearing might have been different. (*Takahashi, supra*, 202 Cal.App.3d at p. 1477 [if plaintiff had raised and proved her defenses at the commission hearing, her termination would have been judged wrongful, and she then could have sought in court the damages to which she was entitled, but which the commission had no authority to award].)

In short, the issue whether Basurto's termination was wrongful was actually litigated and necessarily decided by the District Board, when it determined that Basurto's conduct in violation of District policy justified his dismissal, and that he had not been treated differently than other employees in being terminated. (See *Sims, supra*, 32 Cal.3d at pp. 474, 481, 484–485 [issue of welfare fraud was actually litigated before agency, even though the county failed to present evidence or otherwise participate at the hearing on the ground that the agency lacked jurisdiction: "The failure of a litigant to introduce relevant available evidence on an issue does not necessarily defeat a plea of collateral estoppel."].)

2. *The District Board's Administrative Findings Are Final and Binding*

The remaining threshold requirement for the application of collateral estoppel is that the administrative determination must be final and on the merits. (*Lucido, supra*, 51 Cal.3d at p. 341.) This inquiry necessarily implicates the judicial process by which Basurto unsuccessfully attempted to have the District Board's findings set aside, and so we now address whether that process was fully exhausted and finalized. For purposes of this discussion, we concern ourselves only with Basurto's second petition for writ of mandate and the trial court's ruling thereon.

Basurto's second writ petition did not challenge the merits of the District Board's findings, or contend that they were not supported by the weight of the evidence. Rather, Basurto challenged only what he contended were procedural deficiencies of the District's internal complaint process and the alleged inherent impartiality of the District Board, explicitly with the intent of avoiding the collateral estoppel effect of the District Board's decision on his claims for damages—a result that otherwise would be mandated by the *Johnson* decision. The trial court denied his petition on the ground that Basurto had failed to raise these issues at his hearing and therefore waived them. Although Basurto sought review of that order by means of a petition for writ of mandate to this court, we denied that petition on the ground that Basurto had an adequate remedy on appeal. Accordingly, the only remaining means by which Basurto could have set aside the District Board's administrative findings and prevented them from becoming final and binding under

*Johnson* would have been to challenge the trial court's denial of the second writ petition on this appeal. (See, e.g., *Castillo, supra,* 92 Cal.App.4th at pp. 482–483 [administrative agency's decision is final when the trial court denied the petition for writ of mandate and the time to appeal that denial passed].)

Yet, in his opening brief on this appeal, Basurto all but explicitly disclaims any intent to appeal the trial court's denial of his second writ petition. Instead, Basurto asserts that this appeal presents one "focused issue: Did [the District] establish that its grievance procedure had a judicial character with safeguards sufficient for it to qualify it as the basis for collateral estoppel or res judicata." Indeed, Basurto's opening brief is dedicated exclusively to explaining why the District had failed to meet its burden on summary judgment of demonstrating the adequacy of the District's internal procedures. Not surprisingly, therefore, the District asserts in its responding brief that Basurto failed to appeal the trial court's denial of his second writ petition. However, contrary to his earlier statements expressly limiting the scope of his appeal, Basurto argues in his reply brief that the trial court's denial of his second writ petition is now ripe for review, and suggests that there is no legal justification for the trial court's conclusion that he waived his right to challenge the District Board's findings on due process or bias grounds.

Basurto is correct in pointing out that we previously declined to review the order denying his second writ petition on the ground that Basurto had an adequate remedy by way of appeal. He is also correct that we have the authority to review that interlocutory order upon appeal from the trial court's judgment. (See Code Civ. Proc., § 906.) The question whether a particular order is appealable, however, is different than the question whether a party has properly presented an issue for review on appeal. Under basic principles of appellate review, we generally will not consider substantive legal arguments raised for the first time in the reply brief. (See, e.g., Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2012) ¶ 9.78, p. 9-27 (rev. # 1, 2012); *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [93 Cal.Rptr.2d 364].) Basurto all but expressly abandoned any challenge he might have to the District Board's administrative findings in his opening brief. Although he sought to revive that issue in his reply brief, he offered no explanation and provided no good cause for his failure to address those arguments earlier.

The reason for Basurto's vacillation on this issue may be his dissatisfaction with the District's administrative process, as evidenced by a number of comments made in his briefs in the trial court and on appeal. Indeed, the very fact that Basurto petitioned for mandamus relief solely to avoid the collateral estoppel effect of the District Board's ruling, and not to challenge that ruling

as lacking evidentiary support, reflects his view that the District's administrative process is a " 'procedural minefield,' " a "gauntlet," and a "Serbonian bog of exhaustion of administrative remedies." Basurto apparently viewed more favorably his chances of success in a court of law, and since the adverse District Board ruling, consistently has followed a strategy of merely "going through the motions" of exhausting his administrative and judicial remedies, pinning his hopes on ultimately being able to avail himself of legal recourse.

Basurto was not required to seek relief by means of the District's internal procedures, but having chosen to do so, he is not free to merely abandon that process without consequence. Because Basurto failed to properly appeal the trial court's denial of his second writ petition, the District Board's decision is now final. (See *Johnson, supra,* 24 Cal.4th at p. 69 [the administrative finding that plaintiff was laid off for economic, not discriminatory, reasons became final when plaintiff failed to timely challenge that finding in superior court]; *Castillo, supra,* 92 Cal.App.4th at pp. 482–483 [administrative decision became final when trial court denied writ petition and the time for appeal of that denial passed]; *Briggs v. City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 646 [47 Cal.Rptr.2d 29] [noting that administrative agency's decision "achieve[s] finality" when the aggrieved party fails "to pursue the exclusive *judicial* remedy for reviewing administrative action"].)[6] Furthermore, the District Board's determination was "on the merits" because, as previously explained, "it followed a 'full hearing' in which ' "the substance of the claim [was] tried and determined." ' [Citation.]" (*Castillo, supra,* 92 Cal.App.4th at p. 483.)

---

[6] Although this conclusion renders unnecessary our review of the correctness of the trial court's determination that Basurto had waived his due process and bias claims, we find no merit to Basurto's contention that there was no specific procedure by which he could have raised these issues at his hearing. Nothing prevented him from doing so, and in fact, his counsel recognized at the outset of the hearing that "it [was] incumbent upon [Basurto] to raise objections which normally would be raised in a court of law." The prehearing exchange of letters between Basurto's and the District's outside counsel was insufficient, as the substance of those letters was never brought to the District Board's attention. The case law consistently shows that due process and bias issues must be presented to the hearing officer or tribunal itself for the issue to be preserved. (See, e.g., *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 734–735 [88 Cal.Rptr.3d 610, 199 P.3d 1142] [Morongo petitioned the board for disqualification of enforcement team before the hearing, and after the hearing officer denied the petition, sought reconsideration by the board]; *Haas v. County of San Bernadino* (2002) 27 Cal.4th 1017, 1021 [119 Cal.Rptr.2d 341, 45 P.3d 280] [impartiality objections were raised prior to and renewed at the hearing].) Further, counsel's passing reference in his opening statement to Basurto's impartiality concerns was insufficient to squarely raise the issue of potential bias. "The mere allegation of bias in [an administrative hearing] without any evidence to support [it]" is not enough. (*Parker v. City of Fountain Valley* (1981) 127 Cal.App.3d 99, 117 [179 Cal.Rptr. 351].) In short, the trial court did not err in concluding Basurto had waived his due process and bias claims.

### 3. *Application of Collateral Estoppel in This Case Furthers the Policies Underlying the Doctrine*

We must also consider whether giving estoppel effect to the District Board's decision in this case would be consistent with the policy considerations enumerated in *Lucido*. (See *Lucido, supra,* 51 Cal.3d at p. 343.) We conclude that barring Basurto's civil damages claims would be consistent with those policies.

Fundamentally, giving estoppel effect to an appropriate, quasi-judicial administrative decision "accords a proper respect" to an agency's internal procedures, which provide a means for the agency to quickly determine if it has committed error, and if so, "to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision." (*Westlake Community Hospital v. Superior Court, supra,* 17 Cal.3d at pp. 484, 476.) In *Sims,* the Supreme Court recognized that "[g]iving conclusive effect" to such an agency decision "would promote judicial economy by minimizing repetitive litigation." (*Sims, supra,* 32 Cal.3d at p. 488.) In contrast, permitting relitigation of issues that a party already has had a full and fair opportunity to litigate would "substantially diminish[]" the value of the administrative process. (*Ibid.*; see *Castillo, supra,* 92 Cal.App.4th at p. 483.) Indeed, as the Supreme Court emphasized in *Johnson,* "Refusing to give binding effect to the findings of administrative agencies in quasi-judicial proceedings would . . . undermine the efficacy of such proceedings, rendering them in many cases little more than rehearsals for litigation." (*Johnson, supra,* 24 Cal.4th at p. 72.)

These considerations apply with equal force here. As explained, Basurto chose to avail himself of the District's internal grievance procedure, and he was provided with an adequate opportunity to present evidence at his hearing of every fact or theory he believed supported his contention that his discharge was wrongful. Had he taken full advantage of that opportunity, the District would have been required to consider his age and race discrimination claims. Instead, Basurto sat on his rights, and he did so even though he had first prevailed in his efforts to compel the District to hold a more thorough evidentiary and adversarial hearing than he was given initially. The *Takahashi* court put the matter succinctly, in addressing similar issues underlying a res judicata analysis: "There can be no justification for plaintiff's position that she should be permitted to fail to assert at the administrative hearing constitutional and civil rights violations as reasons that made her termination wrongful, fail to prevail on the writ without attempting to urge or to bring before the court those reasons, and then be allowed to recover damages in this consolidated action that resulted from termination of her employment alleged to be wrongful based on those same reasons." (*Takahashi, supra,* 202

Cal.App.3d at p. 1485.) "It is just such a case as this in which such allegations must be brought at the earliest opportunity, in this case before the [District Board], so that the matter can be resolved." (*Ibid.*)

We hold that, in light of these policy considerations, and for the reasons set forth earlier in this opinion, collateral estoppel effect is properly applied to the District Board's July 2007 administrative decision concluding that Basurto's discharge was consistent with the District's policies and supported by the weight of the evidence. Under *Johnson*, that determination is final and conclusive as to Basurto's FEHA discrimination and breach of contract claims, in that the District has proven that Basurto's discharge was for nondiscriminatory reasons and for good cause. (See *Johnson, supra*, 24 Cal.4th at p. 76; see also *id.* at p. 71 [since plaintiff's FEHA claim "that his discharge was for discriminatory reasons [was] at odds with the preceding determination by the City that the termination was for economic reasons," the administrative finding, because it was final and binding, barred plaintiff's pursuit of relief under FEHA].) The trial court's order granting summary judgment to the District on this ground is, accordingly, affirmed.[7]

### F. *Basurto's Remaining Contentions Do Not Merit Discussion*

Finally, we briefly address, and dismiss, Basurto's contentions that the District failed to comply precisely with the format requirements for summary judgment motions as set forth in Code of Civil Procedure section 437c and California Rules of Court, rule 3.1350. His argument is essentially a "defense" of the trial court's decision not to rule on any of the District's summary judgment or summary adjudication arguments other than collateral estoppel and res judicata. The trial court's decision not to address these other issues rested not on any procedural deficiency in the District's submissions, but rather, as the court explained, on its conclusion that resolution of these matters was unnecessary to its decision. Since Basurto has neither asked us to reverse on this ground, nor cited authority suggesting reversal is required on this ground, we do not consider these contentions here. (See, e.g., *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [124 Cal.Rptr.3d 78] [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.] 'We are not bound to develop appellants' arguments for them.' "].)

---

[7] Because our holding on the collateral estoppel issue itself is sufficient to affirm the trial court's judgment, we do not decide whether the judgment would also be correct on res judicata grounds. We note, however, that given our discussion here, the decision in *Takahashi, supra*, 202 Cal.App.3d 1464, would likely control any res judicata analysis and compel the same result. (*Id.* at pp. 1476–1477, 1481–1485.)

## DISPOSITION

The judgment is affirmed. Respondent may recover its costs on appeal.

Huffman, Acting P. J., and O'Rourke, J., concurred.